GEISE vs. GREENE and another.

[Runkel vs. The Same.]

[Haberman vs. The Same.]

*April 22 — May 11, 1880.*

MILL DAMS: JURISDICTION: COUNTY COURTS. *(1) Jurisdiction in one county touching injuries by dam in another. (2) Jurisdiction of county courts. (3) Application of general mill-dam law.*

1. The county court of any county named in sec. 2465, R. S., has jurisdiction of an action for injuries to lands in such county by flowage caused by the maintenance of a dam in another county, even where the judgment sought would operate upon the dam itself.

2. Sec. 3377, R. S., provides that "any person whose land is overflowed or otherwise injured by any such dam [as previously described in the chapter], may obtain compensation therefor in a civil action as provided in this chapter, against the owner thereof . . . in the circuit court for the county where the land . . . lies, *but in no other manner.*" *Held,* that these last words merely limit the right of civil action for damages or compensation for the lands flowed, *to this form of remedy,* and do not affect the jurisdiction of said county courts.

3. Where the charter under which a mill dam in a certain stream was built, provides for ascertaining the damages for flowage according to the mill-dam law of 1840 (which by its own terms related only to dams in rivers not navigable), it is immaterial whether the stream in question is or is not navigable. *Wood v. Hustis,* 17 Wis., 416.

4. The mill-dam law of 1840 was repealed and subsequently restored, and, with amendments since made in some particulars, is the only general law upon the subject; and, as reënacted in 1857, was declared to be "applicable to *all cases* where compensation has not been made for damages sustained by the erection of any dam *now maintained.*" *Held,* that, in its existing form (ch. 146, R. S.), it governs the present action.

APPEAL from the County Court of *Dodge* County.

Action under the general mill-dam law. The complaint alleges the overflow and injury of plaintiff's land in Dodge county, contiguous to the Crawfish river — which is described as a non-navigable stream, — by means of defendant's mill

dam across said river, located in Jefferson county. It also avers that the dam is maintained at an unreasonable height; and the prayer is for damages, past and prospective, and that the verdict and judgment determine how much the dam shall be lowered.

The defendants demurred to the complaint for insufficiency of facts, and upon the ground that the court had no jurisdiction of the subject matter; and they appealed from an order overruling their demurrer.

For the appellants, a brief was filed by *Hastings & Greene*, with *Geo. W. Bird* and *Wm. F. Vilas* of counsel, and the case was argued orally by *Mr. Vilas:*

1. The state constitution (art. VII, sec. 2) provides for only two kinds of courts besides those specifically named, viz: "municipal courts" and "inferior courts in the several counties;" and as the jurisdiction of the county courts named in section 2465, R. S., is made by statute concurrent with and equal to that of the circuit court, the difficulty of regarding them as "inferior" courts is insuperable. Const. of Wis., art. VII, sec. 8; *Platto v. Deuster*, 22 Wis., 482. To sustain their constitutionality, therefore, they must be deemed "municipal courts." *State v. McArthur*, 13 Wis., 383; *Atkins v. Fraker*, 32 Wis., 510; *McNab v. Noonan*, 28 Wis., 434. As such, the court below only had jurisdiction coëxtensive with the limits of Dodge county, and the demurrer was well taken. *Connors v. Gory*, 32 Wis., 518; *Zitske v. Goldberg*, 38 id., 216; *Mathie v. McIntosh*, 40 id., 120. 2. But even as an "inferior court" its jurisdiction would be equally limited. The constitution provides that such courts may be established " in the several counties," and requires that their judges be chosen " by the electors of the respective jurisdictions," showing clearly an intention to confine the jurisdiction within the county lines. Const., art. VII, sec. 2; 32 Wis., 510. The statute also limits the grant of concurrent jurisdiction made to these county courts, to such as is exercised by the circuit courts " in said

counties," and does not confer upon them the powers possessed by the latter courts, outside the county. R. S. 1878, sec. 2465. For judicial construction of similar constitutional or statutory provisions, see *People v. Evans*, 18 Ill., 361; *Supervisors v. Young*, 31 id., 194; *Meyer v. Kalkmann*, 6 Cal., 582; *Landers v. Railroad Co.*, 53 N. Y., 450. It is no answer to this to say that the court may administer the remedy so far as it is confined within the limits of its jurisdiction, as by adjudging compensation only. The subject matter of the action cannot be thus separated. If the action as an entirety is not embraced in the grant of jurisdiction, there is no jurisdiction whatever. 3. The mill-dam law itself confines the jurisdiction in actions under it to the circuit courts, and declares that compensation shall be obtained "in no other manner." R. S. 1878, sec. 3377. This cannot be construed as merely restricting the remedy to "a civil action," because that was unnecessary. There was *reason*, however, in limiting it to an action *in the circuit court*, because, in cases like the one at bar, only the circuit court is competent to grant the full relief contemplated by the law; and because the jurisdiction is important, affecting vast manufacturing and agricultural interests, and should be lodged in none but courts of general jurisdiction. 4. This dam was erected under a special charter, which provides that the mill-dam law of 1840 shall apply " to any dam constructed by virtue of this act." The provisions of the act of 1840 thereby became a part of the charter, and as such remained in force notwithstanding the repeal of the general law. *Wood v. Hustis*, 17 Wis., 417; *Crosby v. Smith*, 19 id., 449. If this be true, then the reënactment of a new general law, without special reference to the charter, could certainly not affect the provisions thus incorporated into it, and plaintiff's remedy must still be governed by the act of 1840. Besides, the river is navigable, as shown by the charter, while the general law of 1878, under which this action is brought, applies in terms only to rivers not navigable. The remedy being under the act of

1840, that statute must be strictly pursued. Sedgw. Stat. and Con. Law, 341; 22 Wis., 516, 521; 37 id., 186; 30 id., 379; 15 id., 69; 14 id., 443, 609; 12 id., 16; 23 Pick., 36; 3 Met., 380; 1 id., 130, 138, 553; 1 Manning (Mich.), 193; 13 Barb., 209; 5 Hill, 575; 8 Ind., 281; 9 id., 283. That remedy and the one provided by the present general law are wholly different, both as to process, mode of trial, judgment, right of appeal, and manner of computing damages; and they cannot be deemed substantially the same, so that in a given case either can be pursued at will. Nor, upon demurrer, can the action, though manifestly brought under the general law, be deemed one under the charter, provided there is enough in the complaint to sustain such a proceeding. *Supervisors v. Decker*, 30 Wis., 624. To determine what the action is, the summons and prayer for relief are controlling. 13 Wis., 472.

For the respondent there were briefs by *Hall & Skinner*, and by *Jenkins, Elliott & Winkler*, of counsel, and oral argument by *Mr. Jenkins:*

1. No territorial restriction upon the jurisdiction of the county courts has ever been enacted, and none has been supposed to exist. During a long series of years, and in a great multitude of cases, justice has been administered by these courts upon this theory, and their power in this respect has never been questioned. A power thus exercised and acquiesced in for so long should be deemed a rule of property, which is not to be disturbed. *Scanlan v. Childs*, 33 Wis., 666. If an interpretation can be given *sub silentio*, this court has settled the rule in favor of the jurisdiction by repeated decisions. *Page v. Harrison*, 20 Wis., 323; *State v. Smith*, 19 id., 531; *Meshke v. Van Doren*, 16 id., 319; *Second Ward Bank v. Upmann*, 12 id., 499; *State v. Smith*, 14 id., 564; *State ex rel. Mann v. Brophy*, 38 id., 413. Particular attention is called to the case last cited. 2. The jurisdiction is sustained by a correct interpretation of the constitution. Under sec. 14 of art. VII, which provides that the office of judge of pro-

bate may be abolished, and probate powers conferred "upon such inferior courts as may be established" in the several counties, the legislature have transferred the probate jurisdiction to the county courts. It necessarily follows that these county courts are properly "inferior courts," and not "municipal courts." Moreover, this court has twice declared them to be "inferior courts." *Harrison v. Doyle,* 11 Wis., 283; *McNab v. Noonan,* 28 id., 434. The position that "inferior courts" are territorially restricted as to jurisdiction by the constitution, is untenable. As there used, the term includes the circuit courts, whose jurisdiction extends throughout the state. See sec. 3, art. VII. It will be observed that there is no territorial limit to courts of justices of the peace (sec. 14, art. VII); and accordingly justices' warrants and subpœnas have been made to run beyond the county limits. R. S., secs. 4056, 4777. It would be absurd to claim that the power of the county court is more restricted, when it is clothed with appellate jurisdiction over justices' courts. Certainly, there is no territorial limit to the probate powers of the county courts; and it cannot be held that sec. 2 of art. VII restricts the jurisdiction of these courts to the county lines; and it is by virtue of the same article (sec. 14) that these broader powers have been conferred upon them. 3. Section 3377, R. S., merely defines the *mode* of procedure. It does not prohibit jurisdiction in other than the circuit courts. The action of divorce is purely statutory, and given in terms to the circuit court alone; yet in *State v. Smith,* 19 Wis., 531, the jurisdiction of the county court in such an action was sustained. 4. The law of 1840, incorporated into the charter under which this dam was constructed, after being repealed, was subsequently reënacted *verbatim* in ch. 62, Laws of 1857, by the express terms of which its provisions were extended to the case of any dam *then maintained,* for which compensation had not been made. Sec. 3, ch. 62, Laws of 1857; sec. 26, ch. 56, R. S. 1858; sec. 3402, R. S. 1878. The act of 1857, as amended, forms the present

mill-dam law.  That it governs this case was virtually decided in *Zeidler v. Johnson*, 38 Wis., 335; and this accords with the decisions of this court holding that the provisions of the general railroad law operate to modify or repeal prior special charters.  *Moore v. Railroad Co.*, 34 Wis., 173; *Oleson v. Railway Co.*, 36 id., 388; *Bohlman v. Railway Co.*, 40 id., 157.  To claim that the proceeding must be in conformity to the act of 1840, involves the absurdity of requiring the action to be brought in the defunct territorial court, and under the forms of the common law, which are obsolete.

ORTON, J.  The above cases were submitted together upon one argument, and there will be but one opinion, and that filed in the first case.  The positions assumed and so ably urged by the learned counsel of the appellants in support of the demurrer are: *first*, that the jurisdiction to try and determine this case could not be constitutionally conferred upon the county court of Dodge county; *second*, that such jurisdiction has not been conferred by law upon that court; *third*, that the Crawfish river is a *navigable* stream, and therefore not within the present mill-dam law; *fourth*, that the present mill-dam law, under which this suit is brought, is not applicable.

The first position is, of course, predicated upon the assumption that the mill-dam law makes this proceeding directly affect, and the judgment therein operate upon, the mill dam itself, and such dam is beyond the territorial limits of the county of Dodge.  For the purposes of this opinion this will be conceded.

It was unquestionably intended by this court in *McNab v. Noonan*, 28 Wis., 434, to put at rest the question of the constitutional jurisdiction of county courts, and adopt once for all the construction of those provisions of the constitution relating to the subject which had *theretofore* been clearly recognized by the court, either expressly or *sub silentio*.  The in-

terpretation of these provisions of the constitution in so many cases was regarded as so clearly settled beyond further controversy, that in the case of *State ex rel. Mann et al. v. Brophy*, 38 Wis., 413, the question of the jurisdiction of the county court of Milwaukee county to issue an execution to the sheriff of the county of Oconto, and to proceed as for contempt against the sheriff of that county for willful failure to levy it upon the property of the defendant in that county, was not even raised.

It would seem that the jurisdiction of county courts could not very well be extended further than in that case, where process went to and had operation and effect in a county so distant from Milwaukee county, and the Milwaukee county court subjected to its jurisdiction the sheriff of such county for contempt. That case and the case of *The State v. Smith*, 19 Wis., 531, in which the question of the jurisdiction of the same court in *divorce* was directly raised, and in which it was held that the jurisdiction of the county court in such case depended upon the value of the property of the defendant, wherever situated, which was to be subjected to the payment of alimony, must be held to have settled the question of the constitutional jurisdiction of county courts, when conferred by law, in cases affecting persons or property beyond the territorial limits of the county.

The obvious meaning of the clause found in section 3377, R. S., "but in no other manner," is to limit the right of civil action for damages or compensation for lands flowed by means of a mill dam, to this form of remedy, and make it *exclusive*. The language of section 2465, conferring jurisdiction upon the county courts, is very broad and very plain, and has but one *exception:* "Such courts shall exercise powers and jurisdiction in all civil actions and proceedings, in law or equity, except as to actions and proceedings under chapter 151, concurrent with and equal to the jurisdiction of the circuit courts in said counties." The exception named is foreign to the subject. This

proceeding is called a "civil action" in the mill-dam law. To create another exception to this comprehensive and unlimited jurisdiction, when only one is specially defined (which, by being expressed, excludes others), by mere license of construction, would be most unwarrantable, and subject the jurisdiction of a county court to an unstable and fluctuating interpretation, for the purpose of creating new and other exceptions for convenience, only limited by judicial assumption and discretion.

The closing words of the above section, "in said counties," we have already seen, have not in other cases limited the jurisdiction of county courts to the counties in which they are held, so far as the effect and operation of their judgments and process upon persons and property outside of the county have been concerned. This jurisdiction cannot properly be called *special* in any sense, nor is it specially conferred upon the circuit courts by section 3377; for if the circuit court had not been mentioned, that court would take cognizance of such an action by its general and original jurisdiction conferred by the constitution, if not specially prohibited by law.

Whether the Crawfish river is or is not a navigable stream, has been held by this court to be *immaterial* in such a case. *Wood v. Hustis*, 17 Wis., 416. The charter under which this dam was built, as in that case, expressly provides for the ascertainment of the damages according to the mill-dam law of 1840, which is specially referred to for such purpose. And this naturally leads to the consideration of the last question raised, whether the mill-dam law of 1840, for such purpose, is repealable or amendable.

It was clearly the intention of the legislature by such reference to provide for the ascertainment of the compensation and damages to the owner of lands overflowed and injured by this dam, according to the *general law* relating to mills and mill dams, and providing a remedy in such cases. There is no significance in referring specially to the act of 1840, be-

cause this was then the only general law upon the subject, and, like all other general laws relating to remedies, was liable to amendment at any time. The mill-dam law of 1840 was repealed in 1849, and restored in 1857, and has since been amended in some particulars; but it still remains the only general law upon the subject, and must be held to be "applicable to all cases where compensation has not been made for damages sustained by the erection of any dam now maintained," according to its express terms.

*By the Court.*— The order of the county court overruling the demurrer in this and the other cases, is affirmed, with costs.