Cody and others vs. Cody.

## Cody and others, Respondents, vs. Cody, Appellant.

*January 18 — February 8, 1898.*

*Jurisdiction: Dodge county court: Trusts: Parties: Fraud: Collateral attack: Holding court in place other than county seat.*

1. By the judgment in a divorce action title to the real estate of the husband was vested in a guardian *ad litem* charged with a trust duty or power in trust for the husband, to be executed as directed by the county court of Dodge county. By sec. 2465, R. S. 1878, as

Cody and others vs. Cody.

amended by sec. 1, ch. 31, Laws of 1879, that court is given powers and jurisdiction in all civil actions and proceedings (with certain exceptions not necessary to be considered) concurrent with and equal to the jurisdiction of the circuit court. *Held*, that as a court of general equity jurisdiction the county court of Dodge county had jurisdiction, not limited by county lines, over the execution of the trust.

2. Neither the children of the *cestui que trust* nor the divorced wife, who had been awarded a sum of money as permanent alimony and in lieu of dower, had any interest in the property which gave them a legal right to notice of the proceedings to have the trust executed.

3. Fraud in the procurement of a judgment does not affect the jurisdiction of the court rendering it, so as to render the judgment open to collateral attack.

4. Under sec. 2471, R. S. 1878 (providing that the county judge may adjourn any term of the court to his office, or to some other place, when the court cannot be conveniently held at the court house on account of the sitting of the circuit court, "or for any other cause"), the county judge of Dodge county had ample discretionary power to hold court at his office in a city other than the county seat for the purpose of hearing an order to show cause in a proceeding to execute a trust, made returnable at a special term of court to be held at that place.

APPEAL from an order of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

This is an appeal from an order of the circuit court for Jefferson county overruling a demurrer to the complaint. The object of the action is to set aside as fraudulent and void a certain deed of all of Dr. James Cody's real estate, made January 28, 1888, to the defendant, *W. G. Cody*, his son, and a mortgage thereon for $20,000 made by the defendant to one Frank B. Tuttle, and also to have the title of the property adjudged to be in the plaintiffs and defendant jointly. The plaintiffs are three of the children and heirs at law of Dr. Cody, and the administrator of his estate, and the defendant is his only other child and heir at law.

The complaint shows that on August 4, 1872, Dr. Cody's family consisted of himself, his wife, one daughter, *Adaline*

*Cody* (now *Adaline Salick*, one of the plaintiffs), and one son, *William G. Cody*, the defendant; that the wife died on the last-named day, and that Dr. Cody married Theresa Kelly January 28, 1880, he being then sixty years of age, and owning real and personal property worth $20,000; that by said second marriage he had two children, *Edward* and *James A. Cody*, who are plaintiffs in this action and appear by their guardian *ad litem.* The complaint further charges that the defendant, *W. G. Cody*, immediately after the second marriage of his father, formed a plan to fraudulently secure for himself all of his father's property, and for that purpose he deliberately attempted to alienate the affections of his father from his second wife. Then follow numerous allegations showing the progress of the defendant's efforts in this direction, which it is unnecessary to set forth.

It is sufficient to say that the complaint charges: That the defendant finally succeeded in his attempts, and alienated the affections of his father from his second wife, and also succeeded in obtaining from his father, by undue influence and fraud, a deed of the farm in Dodge county, which is the real estate in litigation, on the 27th of September, 1886; his father being at that time mentally incompetent to transact business and in fact insane. That in April, 1887, Mrs. Cody commenced an action for divorce in the circuit court for Jefferson county, in which she joined *W. G. Cody* as a co-defendant and sought to set aside the conveyance of said farm. That the venue of said action was changed to Dane county, and thereafter A. L. Sanborn, Esq., was appointed guardian *ad litem* of Dr. Cody in said action. That in November, 1887, this action was settled by stipulation, and a judgment entered granting Mrs. Cody an absolute divorce, together with the custody of the two minor children and $4,000 permanent alimony. That the judgment also provided that Mrs. Cody, *W. G. Cody*, and Dr. Cody execute a conveyance of said real estate to Mr. Sanborn,

who should thereupon execute a deed of the same, in trust for Dr. Cody, to such person as the Dodge county court should designate, provided such court should deem it necessary to provide a trustee, with all such declarations of trust as said county court should determine. That thereafter Mrs. Cody, Dr. Cody, and *W. G. Cody* executed a deed of said property to Mr. Sanborn. That in the month of December, 1887, the defendant and F. B. Tuttle, his attorney, falsely and fraudulently represented to Mr. Sanborn that Dr. Cody had been restored to sanity, and was a resident of Dodge county, and desired proceedings to be taken in said Dodge county court to carry out the trust imposed upon him in the divorce action, and that thereupon Mr. Sanborn made a petition to said Dodge county court, applying for the appointment of a trustee for the doctor, if necessary, and that he (Sanborn) be directed to convey to such trustee, or to such other person as the court should determine, for the benefit of said James Cody. That the defendant and said Tuttle fraudulently procured an order to show cause upon such petition from the county court of Dodge county, returnable at a special term of said court to be held at the county judge's office at Beaver Dam, December 27, 1887, and that said order to show cause was served upon Dr. Cody, and service thereof admitted by him, although he was at the time insane. That by fraud and imposition the defendant and said Tuttle unlawfully procured from said county court on December 27, 1887, an order whereby Mr. Sanborn was directed to deed to the doctor all said real estate, and the doctor was directed to deed the same to the defendant, and the defendant was directed to execute to Tuttle a bond and mortgage in the penal sum of $20,000 for the doctor's support during the doctor's life, and Mr. Sanborn was further directed to deliver to the doctor all personal property in his hands as guardian *ad litem*. That the defendant and Tuttle procured said order to be made by said county court by

falsely and fraudulently representing that the doctor was
fully competent to receive and hold said property, and that
he opposed the conveyance to a trustee, and by presenting
to said court false affidavits as to the doctor's condition,
when in fact the doctor was insane.  That no notice of said
proceeding was ever given to either of the plaintiffs in any
way.   That said deed and the bond and mortgage were all
executed according to said order, and that on May 13, 1893,
the defendant fraudulently procured from said Tuttle the
satisfaction of said mortgage, and recorded the same.  That
Dr. Cody died intestate in October, 1894, being then an in-
mate of the Northern Hospital for the Insane.   That the
plaintiffs had no knowledge or notice of the two deeds or
mortgage until within a year of the commencement of this
action, nor did they discover the facts constituting the fraud
until within said year.

   The relief demanded is that the doctor's deed of Janu-
ary 28, 1888, to the defendant, and the mortgage from the
defendant to Tuttle of the same, be declared null and void,
and that the title be adjudged to have been in the doctor at
the time of his death, and to be now in his four children and
heirs at law, and that the defendant account for the rents,
issues, and profits of said real estate.

   For the appellant there was a brief by *Spooner, Sanborn
& Spooner*, attorneys, and a supplemental brief signed also
by *Burr W. Jones*, of counsel, and the cause was argued
orally by *Mr. A. L. Sanborn* and *Mr. Jones*.

   For the respondents there was a brief by *Geo. W. & H. S.
Bird*, and oral argument by *Geo. W. Bird*.

   WINSLOW, J.   This is an action in equity brought in the
circuit court for Jefferson county to set aside a deed and
mortgage of certain real estate which had been made in
obedience to an order of the county court of Dodge county.
It is not attempted in this action to set aside or vacate the

order itself, but to annul the acts done in pursuance of the order, while leaving the order itself unreversed and unrevoked by any direct proceeding. It is, within all the authorities, a collateral attack upon the order. The principles which govern a collateral attack upon an order or judgment of a court are well stated by Mr. Van Fleet in his work upon Collateral Attack at section 16, as follows: "In order to make a judgment void collaterally, either (1) a legal organization of the tribunal, or (2) jurisdiction over the subject matter, or (3) jurisdiction over the person, must be wanting, or (4) one or more of these matters must have been lost after it once existed." We understand it to be conceded by the counsel for the plaintiffs that this action is in fact a collateral attack upon the order of the Dodge county court, and upon that basis he argues, with his usual force and learning, that there was a lack of jurisdiction, both of the person and of the subject matter, in that court when the order in question was made.

The Dodge county court was not a mere probate court when this order was made. It had been endowed with limited civil jurisdiction, in addition to the ordinary probate powers. By sec. 2465, R. S. 1878, as amended by sec. 1, ch. 31, Laws of 1879, it was given powers and jurisdiction in all civil actions and proceedings in law and equity (with certain exceptions not necessary to be stated) concurrent with and equal to the jurisdiction of the circuit court, when the amount in controversy does not exceed $25,000. The general provisions of law relating to circuit courts, and to civil actions and proceedings therein, are applicable to said county court. R. S. 1878, sec. 2466. Under these provisions there can be no doubt that within the prescribed limits the county court of Dodge county possesses concurrent and equal jurisdiction and powers over civil actions and proceedings, with the circuit court. *Platto v. Deuster,* 22 Wis. 482; *Geise v. Greene,* 49 Wis. 334; *Am. L. & T. Co. v. Bond,* 91 Wis. 204.

By virtue of the judgment in the divorce action, the title to the real estate in controversy had been vested in Mr. Sanborn, charged with a trust duty, or a power in trust (it is immaterial which), to be executed as directed by the county court of Dodge county. Now, had the judgment directed that the trust or power should be executed under the command of the circuit court for Dodge county, we think that no contention would be raised as to the jurisdiction of that court to act in the matter upon proper application. The general jurisdiction of the circuit courts over the execution of trusts and powers of all classes is undeniable, and is not limited by county lines, and the provision that this trust or power should be performed under the direction of the circuit court of a certain county would not confer jurisdiction upon that court, but simply operate as a command to the guardian *ad litem* to invoke the already existing power and jurisdiction of the designated court to direct his action. Such being the law with reference to the circuit court, no reason is perceived why the same power and jurisdiction did not exist in the county court of Dodge county, there being no claim that the property in question exceeded in value the legal limit of jurisdiction of that court. These considerations seem to settle the question as to the jurisdiction of the subject matter.

As to the jurisdiction of the person, we can perceive no serious question. All the persons who had any legal interest in the matter were before the court when the order was made. The guardian *ad litem* was there, moving the court to act as it was his clear duty to do under the divorce judgment. The deceased, Dr. Cody, who owned the beneficial interest in the property and for whose benefit alone the entire proceeding was devised, was duly served upon, besides being in fact represented by his guardian *ad litem* in the divorce action, who was acting in his interest. The divorced wife had no interest in, or lien upon, the property.

She had been awarded $4,000, as permanent alimony and in lieu of dower, in the divorce action. The children had no legal interest, as probable heirs at law, prior to the death of their father. So it is not perceived that any other person or persons had any legal right to notice of the proceedings. The principle laid down in the cases of *Mohr v. Porter*, 51 Wis. 487, and *Mohr v. Manierre*, 101 U. S. 417, is applicable.

As to the numerous allegations charging fraud and imposition on the part of *William G. Cody*, both upon his father, upon Mr. Sanborn, and upon the court, it is very plain that none of them can affect the question of jurisdiction. A judgment may be procured by the grossest fraud, and yet be within the undoubted jurisdiction of the court which renders it. Upon collateral attack, the question is not whether the judgment was obtained by fraud, but whether it was rendered without jurisdiction.

But it is claimed that the order of the Dodge county court was void because not made at the county seat of the county, but at the chambers of the judge in another city. (R. S. 1878, sec. 2440.) The complaint charges, in several places, that the proceeding was before the "county court of Dodge county," and that the order was made by the "county court." Having charged that the order was made by the court, it is perhaps doubtful whether this question is open, because, if the contention is well founded, then the act was not the act of the court at all. But the statute (R. S. 1878, sec. 2471) expressly provides that the county judge may adjourn any term of the court to his office, or to some other suitable place, when the court cannot be conveniently held at the court house on account of the sitting of the circuit court, "or for any other cause." This certainly gives the county judge ample discretionary power to hold court at his office, as was done here. He would seem to be the sole judge of the sufficiency of the cause for doing so.

Our conclusion is that upon this complaint the order of

the county court cannot be collaterally attacked; and, consequently, that the demurrer should have been sustained:

It is due to Mr. A. L. Sanborn, who is a highly-respected, member of the Dane county bar, to state that the complaint does not in any way charge him with any improper action in the entire proceeding.

*By the Court.*— Order reversed, and action remanded with directions to sustain the demurrer.