BARNEY, County Judge, Appellant, vs. BABCOCK'S ESTATE, Respondent.

| | |
|---|---|
| 115 | 409 |
| 116 | ³250 |
| 116 | ³252 |

*September 24 — October 21, 1902.*

*Judgment: Conclusiveness: Collateral attack: Executors: Final settlement and discharge: Testamentary trust: Appointment of administrator* de bonis non: *Jurisdiction: Sureties.*

1. When a court has jurisdiction to render a judgment, every proposition assumed or decided, leading up to the final result embodied in it, is deemed to be included therein; and until it is reversed on appeal or in some direct proceeding to that end, it is deemed to be conclusive upon all parties to the proceeding in that and all courts.

2. Thus, in a proceeding against a surety upon the bond of an administrator *de bonis non,* the appointment of such administrator cannot be declared void if the county court making the same had jurisdiction of the subject-matter.

3. An executor, who was also a trustee under the will, having filed his final account, an order was made reciting that he be "discharged from all liabilities of his said administration, and of the bond given by him as such executor upon his paying and delivering the residue of said estate remaining in his hands according to said account, to wit: the sum of $2,329.40 held by him in trust, the income to be paid to T. during her life and after her death the principal to be paid to her children . . . as provided by the will, . . . and as to said $2,329.40 the said bond of said executor to be and remain in full force until the further order of this court." *Held*, that the county court thereby judicially determined that the duties of the executor as such were not fully terminated until payment of the trust fund to those ultimately entitled to it; and that thereafter, upon resignation of the executor and petition for the appointment of an administrator *de bonis non*, the court had jurisdiction of the subject-matter of such appointment.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

Facts: Josiah Woodward died testate March 1, 1877. His will was admitted to probate in the county court for Dodge county, Wisconsin, April 9, 1877. His property, after the payment of his debts and the expenses of the administration, was willed to his wife for life, and thereafter one half to Edward H. Woodward, his son, and one half to Lucy M. Thomas, his daughter, the latter portion to be held in trust by the son and the income thereof paid her during her life, and the principal then to be paid to her children in equal shares. The widow and son were designated in the will as executors. The widow died previous to the admission of the will to probate, so the son was approved as sole executor and duly qualified as such. In the due execution of his trust he converted the realty into personalty, and thereafter such proceedings were duly had that his final account of all proceedings required as executor, except in relation to the trust fund, was settled and allowed March 25, 1878. The judgment in that regard adjudged the amount of the trust fund belonging to the widow and the daughter to be $2,329.42. The material

part of the order settling the account, determining the
amount of the trust fund, and adjudging the manner of its
custody and disposition, in terms discharged the executor as
such, and his bondsmen, upon condition of his delivering
such fund to the persons entitled thereto in accordance with
the will, and reserved the liability of such bondsmen until
such delivery or until the court determined otherwise. May
28th thereafter, Woodward, still pretending to act as execu-
tor, loaned the trust fund to John Rose for the term of five
years, taking, in his said representative capacity, the latter's
promissory note therefor, secured by a real estate mortgage.
Thereafter, upon a petition to the county court made by
Woodward as executor, setting forth that for reasons stated
he would be thenceforth unable to properly execute the trust
in regard to said trust fund, he applied for the appointment
of an administrator *de bonis non* to act in his place. The
petition was granted, Andrew Willard being appointed. He
qualified, J. H. Babcock and Samuel Hodgman becoming his
bondsmen. The bond was in the usual form of executors'
bonds under the laws of this state. . Thereupon the trust fund
was turned over to him, and his predecessor filed a proper
receipt, showing such fact, in the county court. Thencefor-
ward, Willard accounted for the trust fund to Mrs. Thomas
till January 31, 1899, but did not at any time account to the
court. He died insolvent September 16, 1899, having previ-
ously converted the whole of the trust fund to his own use.
Prior to January 16, 1900, both of his bondsmen died. Such
proceedings were duly had at the instance of the children of
Mrs. Thomas, that on the day last named the Milwaukee
Trust Company was duly appointed successor to Mr. Wil-
lard as administrator *de bonis non* with the will annexed, of
Josiah Woodward, and also trustee to receive the trust fund
and execute the trust in regard thereto; and at the same time
the company was duly authorized to proceed against the es-
tates of Willard and his bondsmen to recover such fund.

Thereafter proceedings were duly had in the matter of the estate of Josiah Woodward for the settlement of the account of Willard, administrator *de bonis non,* resulting in the entry of a judgment to the effect that there was in his hands at the time of his death, belonging to the trust fund, $2,470.98, and that his estate was liable therefor. Such liability was thereupon duly transferred, by the judgment of the court, to the Milwaukee Trust Company, as trustee. A claim for the amount thereof was thereafter duly allowed against the estate of Willard, deceased, and $851.48 collected thereon. Proceedings were duly taken in the settlement of the estate of J. H. Babcock, deceased, for the enforcement of the liability resting upon the deceased as bondsman at the time of his death, resulting in a judgment against him for the amount of the trust fund, less the amount collected from the Willard estate as aforesaid. An appeal was taken from such judgment to the circuit court for Dodge county, and on the trial in such court it was reversed and judgment was rendered dismissing the claim with costs, from which judgment this appeal was taken.

*Edwin S. Mack,* for the appellant.

*M. E. Burke,* for the respondent.

MARSHALL, J. The trial court seems to have decided this case wholly upon the theory that it was competent in this action to review the proceedings of the county court of Dodge county, appointing Willard administrator *de bonis non* with the will annexed, of the estate of Josiah Woodward, and to declare the same void. The court seems to have exercised that supposed jurisdiction, to have declared such appointment absolutely void, and thereby reached the conclusion that no liability existed against his estate as administrator *de bonis non,* consequently none against the estates of his deceased bondsmen. After reciting the facts leading up to and inclusive of Willard's appointment, the learned circuit judge,

in the opinion filed, on which the findings and conclusions upon which the judgment is based were made, used this language:

"There was no authority of law, upon such a state of affairs, for the appointment of an administrator *de bonis non;* and that the sureties signing the bond of Andrew Willard as administrator *de bonis non* only were liable for the legal effect of the bond, which was, that such administrator *de bonis non* should legally administer such estate as legally came into his hands as such administrator."

We must assume that the language, "there was no authority of law," was used by the learned judge upon the theory that the entry of the order settling the account of E. H. Woodward, executor, and adjudging the amount of the fund held by him in trust, *ipso facto* discharged him as executor, leaving nothing whatever to be done by him as such in the Josiah Woodward estate; that the county court, by the subsequent proceedings, did not obtain any jurisdiction of the subject-matter of the appointment of an administrator *de bonis non* because there was, in fact, no occasion for such an appointment. Upon no other theory is it reasonable to suppose the judge looked upon the appointment of Willard as without any "authority of law." No court has yet been given the power, under our judicial system, to declare void in a collateral proceeding, any order or judgment of such or any other court because of judicial errors in entering it, however numerous or grievous they may be. No principle of law is better settled than that judgments and orders are absolutely free from any such danger. *Cody v. Cody,* 98 Wis. 445, 74 N. W. 217; *Roberts v. Weadock,* 98 Wis. 405, 74 N. W. 93; *Parsons v. Parsons,* 101 Wis. 76, 77 N. W. 147; Wells, Res Judicata, § 217; *Giffert v. West,* 37 Wis. 115; *Quackenbush v. W. & M. R. Co.* 71 Wis. 472, 37 N. W. 834; *Cramer v. Stone,* 38 Wis. 259; *Pray v. Hegeman,* 98 N. Y. 351; *Iowa Co. v. M. P. R. Co.* 24 Wis. 93; *Danaher v. Prentiss,* 22 Wis. 311. When a court has jurisdiction to render a

judgment, every proposition assumed or decided, leading up to the final result embodied in it, is deemed to be included therein; and until it is reversed on appeal or in some direct proceedings to that end, it is deemed to be conclusive upon all parties to the proceeding in that and all courts. So it follows that if the county court of Dodge county had jurisdiction of the subject-matter of the appointment of an administrator *de bonis non* to succeed E. H. Woodward upon the filing of his petition to that end, the circuit court in this action committed a grievous error in deciding that what the county court did in the exercise of its jurisdiction was void.

It is by no means clear but that, assuming that the order settling Woodward's account as executor *ipso facto* terminated his office as such, or at least left a state of facts calling for the appointment of an administrator *de bonis non,* still a judicial question in regard to the matter was presented to the county court for adjudication, by the petition for such appointment, and in that event the rule above stated would bar any court from subsequently reviewing the proceedings and adjudging the final order or judgment entered upon the petition void in a collateral proceeding. But that question is rendered immaterial by the conclusion which we have reached as to the effect of the order. Obviously, if that left Woodward with some duty to perform as executor, it being conceded that the situation at the time of its entry continued up to and inclusive of the time of the appointment of the administrator *de bonis non,* then it must be conceded, and is, as we understand it,—and if not, we should have to so hold,— that an occasion existed for such an appointment, or at least that, whether there was or was not such an occasion was a judicial question which the court was called upon to solve.

The material part of the order in question is as follows:

"The said Edward H. Woodward be and he hereby is released and discharged from all liabilities of his said administration, and of the bond given by him as such executor upon

his paying and delivering the residue of said estate remaining in his hands according to said account, to wit: the sum of ($2,329.40) two thousand three hundred and twenty-nine dollars and 40-100 dollars held by him in trust, the income to be paid to Lucy M. Thomas during her life and after her death the principal to be paid to her children share and share alike as provided by the will of said deceased—and as to said $2,349.40 the said bond of said executor to be and remain in full force until the further order of this court."

That language seems plain. The county judge evidently supposed, and accordingly judicially determined, that Woodward's duties as executor were not fully terminated till the principal sum mentioned, the trust fund, was paid over by him to those ultimately entitled thereto. He was very careful to leave no doubt about the matter. *Ex industria,* he endeavored to impress that upon the executor and his bondsmen as well. There can be no reasonable controversy but that this language bears out that statement:

"And as to said $2,329.40 the said bond of said executor to be and remain in full force until the further order of this court."

True, the word "trust" was used in the order, but it was used in such a manner as to clearly indicate that the idea in the judicial mind was that the fund in the hands of the executor was to there remain in trust until otherwise ordered by the court. Nothing to indicate a purpose to transfer the fund from the control of Woodward, executor, to him in a purely trust capacity, appears. All indications are that the court considered that his office as executor, so far as regards executing the trust, should continue till the trust fund reached the ultimate takers, unless some other provision was made to execute the same. That may have been an erroneous view of the will and the law, but if so it was not one which the county judge had "no authority of law" to entertain. At most it was a mere error of judgment in the exercise of the undoubted jurisdiction of the court,—such an error, as has

often been said, a court has jurisdiction, in other words, "authority of law," to make. Right or wrong, the final conclusion declaring the law based on such an error, is the law in fact for the purpose of the proceeding, the same in one case as in another, and must be respected and regarded in all courts and places as embodying infallible truth, till otherwise determined in some one of the ways provided by our judicial system for reviewing the matter. *"Judicia sunt tanquam juris dicta, et pro veritate accipiuntur."*

It follows from what has been said that the supposed ground upon which the trial court rested the judgment appealed from does not exist. It is immaterial, as we have seen, whether the purpose of Josiah Woodward was to separate the office of trustee from that of executor, or whether it should have been so separated by the judgment of the county court when there was no further use, necessarily, for an executor. It is sufficient that the two offices were, by the judgment of the county court, one at the time of the appointment of the administrator *de bonis non,* and were by such judgment to continue so until the further order of that court, and accordingly did so continue down to and inclusive of the time of the appointment of the Milwaukee Trust Company as trustee and the judicial transfer of the right to the trust fund to such trustee, March 27, 1900. So the greater part of the argument in support of the judgment, made by respondent's counsel, is irrelevant. It is useless to consider whether a state of facts existed calling for the appointment of an administrator *de bonis non* when Willard was appointed, or not. It is sufficient for this case that the county judge had jurisdiction to decide that matter and did decide it, and that his decision is not open to collateral impeachment. There being no question on that point, and no question but that Willard received the trust fund pursuant to his appointment as administrator *de bonis non,* and none as to the amount of the fund for which the estate of his bondsmen should be held—his account hav-

ing been duly and regularly settled in a proceeding binding upon them (*Holden v. Curry,* 85 Wis. 504, 55 N. W. 965; *Schoenleber v. Burkhardt,* 94 Wis. 575, 69 N. W. 343; *Roberts v. Weadock,* 98 Wis. 400, 74 N. W. 93),—and there being no dispute but that all the preliminary proceedings were regularly had necessary to authorize the bringing of this suit in the name of the county judge, the duty of the circuit court to render judgment in favor of the plaintiff for the amount of the trust fund, less the amount recovered from Willard's estate, is plain.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to render judgment in accordance with this opinion.