CARPENTER, County Judge, Respondent, vs. THE UNITED STATES FIDELITY & GUARANTY COMPANY, imp., Appellant.

*October 20—November 15, 1904.*

*Executors and administrators: Attorney's services: Lien on assets: County courts: Jurisdiction: Collateral attack.*

1. Under sec. 2443, Stats. 1898, extending the juridiction of county courts to all matters relating to the settlement of the estate of such deceased persons, who, at the time of death, were inhabitants or residents of the county where the court is located etc., such courts have jurisdiction to determine the amount justly allowable to the attorneys of the administrator out of the estate on account of legal services performed by them, to make the same a lien on the assets thereof, and to order the lien extinguished by using funds for which the administrator is responsible.

2. The court having exercised its jurisdiction in the respect last noted, its decision cannot be disturbed in an action against the sureties on the bond of a defaulting administrator.

3. Where an administrator's account has been duly settled, including an adjudication of the amount due his attorneys for services and disbursements, and final order entered requiring the payment direct to the attorneys of the sum so awarded them, such final order is conclusive in an action brought in the name of the county judge upon the administrator's bond against the sureties.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action on an administrator's bond. The issues raised by the pleadings sufficiently appear by inference from the findings of fact, of which the following is a brief summary:

(1) November 25, 1897, Charles W. Stolla, residing in Milwaukee county, died testate. Such proceedings were duly taken that Arthur M. Kuehn March 8, 1898, was appointed administrator of his estate with the will annexed. He duly qualified as such administrator, entered upon his duties as such and continued in office until the findings herein were filed.

(2) The penal sum in said Kuehn's bond was $51,000, and the surety was the defendant, *The United States Fidelity & Guaranty Company.*

(3) It was provided in such bond, among other things, that if the said Kuehn performed all orders and judgments of said county court it should be void, and otherwise that it should remain in full force and virtue.

(4) February 9, 1903, the administrator rendered an account of his administration, showing receipt of $34,398.07, in money and personal property, disbursements of $26,338.60, and a balance on hand of $7,259.47, in money and a note for $400.

(5) B. K. Miller, George H. Noyes and George P. Miller, as firm of Miller, Noyes & Miller, were the administrator's attorneys until they filed their petition, hereafter mentioned. Otto J. Fiebing and Henry J. Killilea, as firm of Fiebing & Killilea, were likewise his attorneys until they filed their petition, hereafter referred to.

(6) Miller, Noyes & Miller after the filing of said account by petition informed the court that though by such account it appeared that they had received from the estate $4,000, as compensation for legal services, and $1,773.49, for disbursements, no such payment had been made, and requested

payment of such sums out of the assets shown to be in the administrator's hands.

(7) Fiebing & Killilea by petition informed the court that, whereas by said account no credit was taken by the administrator for payments to them, they rendered services to him, which were beneficial to said estate, of the reasonable value of $250, for which they had not been paid. They further informed the court that the administrator was insolvent. They requested that the sum clamed by them might be ordered paid out of the assets of the estate.

(8) Upon due notice to all the parties interested as heirs the petitions were heard before the county judge. It was there made to appear that the facts stated therein were true; that the services rendered by the attorneys were reasonably worth the sums charged by them; that such services were actually rendered for the benefit of the estate; that $1,773.49 were actually disbursed for its benefit by Miller, Noyes & Miller; and that the administrator was insolvent and had appropriated to his own use all the personal property of the estate, except $70.59.

(9) Thereupon payment by the administrator out of money due from him to the estate was ordered of $5,773.49, to Miller, Noyes & Miller, and $250, to Fiebing & Killilea, and said sums were decreed to be liens upon the assets of the estate.

(10) Such proceedings were subsequently duly taken that the administrator's account was settled and a final order of distribution was entered in respect thereto. The sum of $14,778.69 was decreed to be due from the administrator, and he was ordered to pay therefrom the sums allowed to the attorneys as aforesaid, and the balance to the heirs entitled thereto, specifying the amount going to each.

(11) Such heirs consented to the entry of the order.

(12) It was not appealed from, or set aside or vacated.

(13) After the entry thereof due demand was made upon

the administrator to comply therewith, but he refused to do so, except as to the payment of $70.59.

(14) Thereafter due demand was made upon the defendant surety to respond in the sum found due from the administrator, and it refused to do so.

(15) April 17, 1903, thereafter, said county court upon petition of one of such heirs authorized suit upon the aforesaid bond to recover the amount so found due from the administrator for the benefit of the parties entitled thereto.

(16) This action was commenced accordingly and thereafter the surety paid such parties, except said attorneys, Miller, Noyes & Miller and Fiebing & Killilea.

(17) There is due plaintiff from said administrator and said surety for the benefit of said attorneys the sums ordered paid to them, as aforesaid, with interest from April 15, 1903.

(18) The sums ordered paid measure the reasonable value to the estate of the service rendered thereto by the attorneys.

Thereon it was held that plaintiff was entitled to judgment for the sums so ordered paid to the attorneys, with interest, for their benefit, with costs and disbursements. Judgment was entered accordingly.

Exceptions were filed to the findings, which need not be stated in detail. The defendant surety company appealed.

For the appellant there were briefs by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Francis Bloodgood,* of counsel, and oral argument by *J. B. Kemper.*

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *Geo. P. Miller.*

MARSHALL, J. The first question to be noticed is: Did the county court have jurisdiction to determine the amount justly allowable to the attorneys of the administrator out of the estate on account of legal services performed by them, to make the same a lien thereon and to order the lien to be extinguished by using funds for which the administrator was responsible?

True, as counsel for appellant contend, the legal title to the personal property of a deceased person is vested in his personal representative, and that expenses incurred by him in the performance of his duties are not necessarily a charge thereon, and are in all cases personal liabilities of such representative. *Miller v. Tracy*, 86 Wis. 330, 56 N. W. 866. But it is not the law, as understood here, that the court appointing an administrator has no control over property in his hands during the course of administration, except to require the filing of an inventory, to adjudge upon claims of the deceased, to require the filing of the administrator's account, to order the payment of debts and adjudge the payment of legacies and distribute property according to the law of descent and heirship or the will, if there be one;—that there is no supervisory power over the estate during the period of administration. One should not be misled as to the jurisdiction of our county courts in the settlement of estates by authorities found elsewhere under a different system than ours.

Where the legal title to personal property belonging to an estate upon the appointment of the administrator and his qualification, vests in him, he holds the same in trust and is accountable to the court appointing him after the manner of trustees generally. He is the "arm of the court," so to speak, in the settlement of the estate, the same as a receiver is in an ordinary administration suit. The court has the amplest authority, within the limitations of the statute, to direct him, and to recognize equitable claims upon the funds in his hands, growing out of services performed in the conservation thereof, and to protect the possessor of such claims, if justice so requires, by making them liens upon such funds, after the manner of courts of equity, in administering property in the hands of its agents.

By sec. 2443, Stats. 1898, the county court's jurisdiction is expressly extended "to all matters relating to the settlement of the estate of such deceased persons" at the time the deceased was an inhabitant or resident of the county where the

court is located, having jurisdiction of the matter, or left property within such county to be administered. That broad general power necessarily carries with it by implication all judicial authority of courts of equity in the administration of trusts necessary to the proper administration of the particular class of trusts in question, and that has been the uniform holding of this court.

"The county courts have plenary jurisdiction in all matters of the administration, settlement and distribution of the estates of deceased persons, and much of this jurisdiction is of an equitable character and is necessarily concurrent with that of courts of equity." *Tryon v. Farnsworth,* 30 Wis. 577, 581.

The power of the court includes "all jurisdiction, both legal and equitable, unless expressly reserved, necessary to the due administration of the estates of deceased persons and to the performance of all acts required in the course of such administration." . . . It may grant equitable relief or enforce a trust in a case of this nature, the same as a court of equity; and although the jurisdiction of a court of equity still exists, it does not oust that of the county court in a proper case. The doctrine of equitable estoppel may be recognized, and its principles enforced, as well by the county court as by the court of chancery, the jurisdiction of the latter being concurrent, merely, in any matter pertaining to the settlement of the estates of deceased persons." *Brook v. Chappell,* 34 Wis. 405, 411.

That doctrine will be found often referred to in our reports. The settlement of estates so far at least as relates to trust-fund features is within the inherent jurisdiction of courts of chancery as a part of their general jurisdiction in the administration of trusts. Substantially all authority so possessed by such courts is now likewise possessed by our county courts.

With the foregoing in mind, by reference to the authorities in respect to the power of courts of equity dealing with judi-

cial trustees generally, we may easily determine the measure
of the authority of our county courts in dealing with the ques-
tions under consideration.   We apprehend that time need not
be spent demonstrating that a trustee in a judicial adminis-
tration in equity may not only be permitted to pay out of the
trust fund any legitimate expense incurred in the conserva-
tion thereof, but may be, when necessary to the ends of justice,
required to do so, and when so justly required that the ad-
judged expense may be made by order of the court a lien upon
such fund, and provision be made for its enforcement.   There
is no more legitimate expense that such a trustee can incur
than that for legal service, which is reasonably necessary to
the safety of the fund, and none more commonly required,
upon a proper application, to be paid out of the trust fund.
True, the attorney in such a case has no lien thereon until the
court gives him aid in the matter.   His claim is purely per-
sonal to the trustee.   The rule in that regard is not peculiar
to the class of trusts we have here.   It is a general rule appli-
cable to all trusts.   Every attorney who performs beneficial
services to a trust, directly or in effect enriching the trust
fund, when it is necessary for his protection, is equitably en-
titled to obtain a lien upon the trust fund.   The court has
ample authority to recognize and give effect thereto.   The
manner of acquiring such a lien is for the claimant to peti-
tion the court to determine the amount he should have out of
such fund, considering the character of his services and the
real benefits accruing to the trust therefrom, and to adjudge
the same to be a charge thereon.   There are many cases that
might be referred to where it has been held that it is proper
to make an allowance for such services direct to the attorney
instead of making it in form as an allowance to the trustee.
*Central R. & B. Co. v. Pettus,* 113 U. S. 116, 124, 5 Sup. Ct.
387.   Justice HARLAN in that case said: "When an allowance
to the complainant is proper on account of solicitors' fees, it
may be made direct to the solicitors themselves, without any

application by their immediate client." See, also, *Trustees v. Greenough,* 105 U. S. 527; *Schmidt v. Oregon G. M. Co.* 28 Oreg. 9, 40 Pac. 406; *Laroque v. Candolle,* 4 Md. Ch. 347. The cases where such claims have been ordered paid out of the trust fund as trustee's expense are numerous. Several will be found cited in volume 22, Ency. Pl. & Pr. 214. There are many cases in our own books where authority to make such an order has been exercised. In no instance that we have been able to discover has the right in the matter been questioned. It will be observed that the same was the practice in *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909.

In *Manderson's Appeal,* 113 Pa. St. 631, 6 Atl. 893, a situation was dealt with there similar to the one in hand. The attorney for an executor rendered valuable services in respect to the estate. Such executor squandered the funds, out of which the supervisory court would, had opportunity been afforded therefor, authorized the attorney to be paid, and then absconded. After the defalcation was known and a successor appointed and put in possession of the property not misappropriated, the attorney applied to the court for an order requiring payment of his claim therefrom. The application was disallowed because the claim was a personal liability of the unfaithful executor; such executor by reason of his maladministration was not entitled to any compensation, either for his services or expense of obtaining legal assistance; and that when he squandered the trust fund, out of which he might have been compensated for such services and expenses, he in effect squandered the money belonging to his attorney. Under the circumstances it was held that it would be unjust to take from the remaining property belonging to the estate to pay the attorney's claim; that he should suffer for the sins of his employer. Upon appeal the court decided otherwise. It was said, in effect, that reasonable compensation for necessary beneficial legal services in such a case should, upon equitable principles, be paid out of the remaining property; that such serv-

ices were rendered for the protection of the interests of the legatees, and that the sin of the trustee should not militate against the attorney's equitable right to pay for services rendered in conserving their interests.

Having reached a conclusion as above, we are precluded from inquiring whether the county court committed judicial error in exercising its authority. Its decision cannot be disturbed by a collateral attack. *Cody v. Cody,* 98 Wis. 445, 74 N. W. 217; *O'Connor v. Fond du Lac,* 101 Wis. 83, 76 N. W. 1116; *Roberts v. Weadock,* 98 Wis. 400, 74 N. W. 93; *Barney v. Babcock's Estate,* 115 Wis. 409, 91 N. W. 982.

The principle last alluded to rules the question of whether when this action was commenced the administrator was responsible for property belonging to the estate to the amount alleged. His account was duly settled and the final order in respect thereto, which is in harmony with the complaint, is conclusive in this action. *Meyer v. Barth,* 97 Wis. 352, 72 N. W. 748; *Wallber v. Wilmanns,* 116 Wis. 246, 93 N. W. 47. According to that order, at the commencement of this action there was $14,778.69, in the hands of the administrator for distribution, and for which the appellant as surety was liable. The county court might have ordered payment of the entire amount into court or to a successor of the unfaithful executor and then disbursed the fund to the heirs or others justly entitled thereto. The fact that a part thereof was ordered paid to the attorneys instead of the heirs is a matter that does not rightly concern appellant. According to the judgment of the county court the entire fund belonged to the heirs, subject to such equitable claims thereon as were found to exist. Those who could have been prejudiced by the circumstance that part of the fund was ordered paid to the attorneys were the heirs. They made no complaint. They consented to the order. It is conceded, that if the entire fund had been ordered paid to the heirs appellant would have been responsible to the full extent thereof. Its obligation was not

subject to variance by the mere direction which the county court saw fit, acting within its jurisdiction, to give to the fund or any part thereof.

*By the Court.*—Judgment affirmed.