STATE of Wisconsin, Plaintiff-Respondent,

v.

John W. CAMPBELL, Defendant-Appellant.

Supreme Court

*No. 2004AP803–CR. Oral argument January 11, 2006.
—Decided July 12, 2006.*

2006 WI 99

(Also reported in 718 N.W.2d 649.)

101

104

For the defendant-appellant there were briefs and oral argument by *Charles Bennett Vetzner,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. DAVID T. PROSSER, J.   This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).[1] The appellant, John Campbell (Campbell), was convicted of felony bail jumping as well as two counts of parental interference with the custody of a child. On the bail jumping charge, Campbell was accused of committing two crimes while he was on pretrial release for other felony offenses. The two crimes were the two counts of parental interference with the custody of a child. The interference crimes involved alleged violations of an order granted to Campbell's then-wife, Denise Hladish-Campbell (Denise), for temporary custody and primary placement of their two sons.

¶ 2.   On appeal, Campbell seeks to reverse one of the two interference with custody charges and the bail jumping charge. He claims that the circuit court erred when it prevented him from collaterally attacking the validity of the custody order on grounds that his wife procured that order by fraud.

¶ 3.   This appeal presents two issues. First, did the circuit court err in preventing Campbell from collaterally attacking the validity of the family court's custody order in his criminal trial, even though Campbell alleged that the order was obtained by fraud? Second, under what conditions, if any, may a circuit court impose attorney fees for standby counsel as a condition of a defendant's probation?

¶ 4.   We conclude that a court may permit a collateral attack on a judgment or order procured by fraud if the fraud is jurisdictional, making the judgment or order void, thereby negating an element of a crime, or if the fraud raises an affirmative defense to the crime.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version, unless otherwise noted.

Because Campbell's allegations of fraud do not tend to negate any element of a crime and do not constitute an affirmative defense, the circuit court properly excluded evidence of the alleged fraud and prevented Campbell from collaterally attacking the custody order.

¶ 5. We also conclude that in exercising its discretion to appoint standby counsel, a circuit court *may* impose the attorney fees of standby counsel upon a defendant as a condition of probation where either (1) the defendant agrees to reimburse the county for the attorney fees; or (2) the court informs the defendant of his potential liability for the fees *and* the defendant uses standby counsel so extensively that he or she functions as traditional defense counsel. Under both alternatives, however, before imposing fees the court must determine the defendant's ability to pay pursuant to Wis. Stat. § 973.20(13)(a)2. to 5. Because that determination was not made in this case, we remand to the circuit court to evaluate Campbell's ability to pay.

¶ 6. Accordingly, we affirm Campbell's convictions, hold that the circuit court had the authority, under these facts, to impose the attorney fees of standby counsel as a condition of probation, but remand for the circuit court to determine whether the full amount of attorney fees should have been imposed.

## I. BACKGROUND

¶ 7. The facts in this case are complex. Campbell married Denise James (formerly Denise Hladish-Campbell) in 1986. Sometime circa 1990, Vickie Prushing (Vickie), became involved with the couple, and she lived with them for substantial periods of time between 1990 and 1997.

¶ 8. On September 17, 1990, Vickie gave birth to a son, Randy, in Kansas. Campbell is listed as the biologi-

cal father on Randy's birth certificate, but he may not be the biological father. In any event, Campbell and Denise adopted Randy in Kansas on August 30, 1994. This fact is not in dispute.

¶ 9.    On November 11, 1995, Vickie gave birth to a second son, Cody, in Missouri. Again, Campbell is listed as the biological father on the birth certificate. Moreover, in 1996 a Missouri court issued an order recognizing Campbell's paternity.[2] A few months later, on September 23, 1996, Campbell and Denise filed a petition in Missouri to adopt Cody. The petition was granted on March 14, 1997, by a Missouri circuit court. The order recognized Campbell as the natural father and declared Denise the adoptive mother of Cody.

¶ 10.    Between the time that Campbell and Denise petitioned for the adoption of Cody and the Missouri court's March 14, 1997, adoption decree, the Campbells moved to Wisconsin. By November 1996 they were living in Walworth County, but they failed to share this information with the Missouri court. Campbell and Denise did return to Missouri on two occasions for court hearings. The second time, they brought Cody with them to court, at which time the Missouri court declared Denise the adoptive mother of Cody.

¶ 11.    Sometime after they moved to Wisconsin, the Campbells' relationship began to deteriorate. Matters came to a head on September 10, 1997, when Campbell physically assaulted Denise. On September 12 he was charged with second-degree reckless endangering of safety and false imprisonment, both felonies,

---

[2] In 2001 Vickie testified that the father of Cody might be someone other than Campbell. Also, at the sentencing hearing in this case, Campbell himself acknowledged that he is probably not Cody's biological father.

and battery and disorderly conduct, misdemeanors. Four years later, he pled guilty to battery and disorderly conduct, with the two other charges being dismissed.

¶ 12.    The September 12 charges are significant because, after they were filed, Campbell was released on bond with the standard condition that he not commit any crime on release.

¶ 13.    Denise petitioned for divorce on September 16, 1997. On September 22, 1997, a family court commissioner issued a temporary order giving legal custody and primary placement of Randy and Cody to Denise. The custody order gave alternate periods of placement to Campbell. On December 23, 1997, the commissioner entered an order giving Campbell placement of Randy and Cody on alternate weekends from 4:00 p.m. Friday to 6:00 p.m. Sunday.

¶ 14.    Prior to entry of the temporary order, Campbell challenged the validity of Denise's adoption of Cody. Campbell told the family court commissioner that the adoption decree was void for fraud. Campbell explained that at the time the Missouri court granted the adoption, he and Denise represented to the court that they resided in Missouri, when in fact they did not. Campbell raised the issue with the family court more than once. Ultimately, the family court commissioner rejected Campbell's challenge to the validity of the adoption, ruling that Campbell had to attack the validity of the adoption in Missouri.

¶ 15.    Campbell then filed a motion challenging the validity of the custody order, contending the family court lacked jurisdiction and that Denise had secured custody and primary placement by fraudulently representing to the family court commissioner that she was Cody's adoptive mother. Campbell requested and received a de novo hearing from the circuit court. At the

hearing on January 22, 1998, the circuit court determined that Campbell could attack the validity of Denise's adoption of Cody but that additional briefing was necessary to decide the matter.

¶ 16. Campbell never filed a brief or appeared again in court for the divorce and custody proceedings. On January 30, 1998, he picked up Randy and Cody for his scheduled weekend with the boys. Instead of returning the children to Denise by 6:00 p.m. on February 1, he fled with Vickie to Mexico, where he planned to live indefinitely and deprive his wife of custody.

¶ 17. Hours after Campbell was supposed to return the boys, Denise called the police. On February 4, Campbell was charged with two counts of interference with child custody in violation of Wis. Stat. § 948.31(1)(b) (1997–98), and one count of felony bail jumping in violation of Wis. Stat. § 946.49(1)(b) (1997–98). Also on February 4, the circuit court found Campbell in contempt of court for failing to abide by the temporary custody order.

¶ 18. Within days of arriving in Mexico, Campbell was detained. Vickie crossed the border back to El Paso with the boys, and on February 8, 1998, Randy and Cody were reunited with Denise in Texas.

¶ 19. In due course, Campbell was released from Mexican custody, and from February 1998 until January 3, 2001, he evaded the law. He spent time in various states before settling down with Vickie in California.[3] In January 2001 he was arrested. In June he was extradited to Wisconsin.

---

[3] While in California, Campbell and Vickie started a family together; they had one child and were expecting a second child at the time Campbell was arrested. Campbell and Vickie's second child was born on July 27, 2001. Both children entered the foster care system in California.

111

¶ 20. On June 19, 2001, the circuit court held the initial appearance in this case, and Campbell advised the court that he wished to proceed pro se. Concerned with the complexity of the case, Walworth County Circuit Judge James L. Carlson asked Campbell whether he wished assistance from standby counsel. Campbell consented and agreed to reimburse Walworth County for the attorney fees of standby counsel. Thereafter, the circuit court appointed Attorney James Martin as standby counsel.

¶ 21. Campbell's next court appearance, the preliminary hearing, occurred on June 26, 2001. The State called Denise as a witness, and both Campbell and Attorney Martin cross-examined her to try to establish the invalidity of her adoption of Cody. At this time, Circuit Judge Robert J. Kennedy ruled that Campbell could challenge the validity of the adoption at trial but that he would have to introduce independent evidence of the adoption's invalidity.

¶ 22. Following the preliminary hearing, the State filed a motion in limine requesting that Campbell not be allowed to collaterally attack the custody order by challenging the validity of Denise's adoption of Cody. On October 4, 2001, Judge Kennedy granted the State's motion, concluding that the custody order could not be collaterally attacked in this criminal proceeding. He also ruled that "Ms. Denise Hladish-Campbell had legal custody of [Cody] during the times charged in the criminal complaint and information" as a matter of law. The circuit court did allow Campbell to make an offer of proof of the evidence he would have presented at trial.

In Campbell's absence Denise secured sole legal custody and physical placement of Randy and Cody and finalized her divorce with Campbell.

112

¶ 23. The circuit court held a four-day trial from November 13 to November 16, 2001. A jury found Campbell guilty of both counts of interference with legal custody of a child and felony bail jumping. On January 9 and 11, 2002, the circuit court held a sentencing hearing and sentenced Campbell to an indeterminate prison sentence not to exceed five years for bail jumping, and withheld sentence and imposed probation of 13 years, consecutive to Campbell's prison sentence, on the two counts of interfering with legal custody. Additionally, the circuit court required as a condition of probation that Campbell reimburse Walworth County for the attorney fees of standby counsel. The circuit court determined that Campbell had to pay $17,585.35 in attorney fees and costs.

¶ 24. Campbell filed a postconviction motion. He requested a new trial on grounds that he should have been allowed to present evidence that Denise's adoption of Cody was invalid. He also challenged the condition of probation that required him to reimburse the County for the attorney fees of standby counsel. The circuit court upheld the imposition of attorney fees as a condition of probation and its decision to prevent Campbell from challenging the validity of the family court's order in the criminal trial.[4]

---

[4] The circuit court stated:

I agree that a question of fraud can be raised under certain circumstances, but the question of fraud in the case like this is clearly something that applies to the question of . . . equity. And in this particular case for the defendant to be allowed to raise an attack upon [the temporary order for placement and custody in the family proceeding], after he—instead of exercising his rights in the civil action to contest that and make his point, violated the court order and fled; and then after the children was collected, hid out for three plus years before he was re-apprehended means to this court that he cannot in the criminal case subsequent raise that

¶ 25.  Campbell appealed his convictions and the denial of his postconviction motion. The court of appeals certified Campbell's appeal, which we accepted.

¶ 26.  The court of appeals certified the following issues:

> Is the holding of *State v. Bouzek,* 168 Wis. 2d 642, 484 N.W.2d 362 (Ct. App. 1992), correct in recognizing a fraud exception to the general rule which bars a collateral attack against an order or judgment of another judicial body in the context of a criminal proceeding? If *Bouzek* does correctly state the law: (1) is the fraud exception properly limited to jurisdictional fraud; (2) does the "clean hands" doctrine apply; and (3) what are the respective roles of the trial court and the jury when addressing a fraud exception?

*State v. Campbell,* No. 2004AP803–CR, unpublished certification (Wis. Ct. App. May 4, 2005). In addition to accepting the certified question, we also assumed jurisdiction over the question of whether the circuit court properly imposed the attorney fees of standby counsel as a condition of Campbell's probation.

## II. STANDARD OF REVIEW

¶ 27.  The first issue requires us to review the circuit court's decision to exclude evidence to support a collateral attack upon the custody and placement order. A determination as to the admissibility of evidence is within the discretion of the circuit court and will be reversed only if the court erroneously exercised its discretion. *Martindale v. Ripp,* 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. A circuit court's discretion-

issue. It may—he may be raising the question of fraud, but he had the full opportunity to develop that fraud argument in the civil case.

ary decision is upheld as long as the court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Id.* Since Campbell contends the circuit court applied an improper standard of law when it prevented him from collaterally attacking the custody order, we review the circuit court's decision to exclude evidence pertaining to the validity of the order independent of the circuit court.

¶ 28. The second issue, whether the circuit court had the authority to impose the attorney fees of standby counsel on Campbell as a condition of probation, is a question of statutory interpretation we review de novo. *State v. Ferguson,* 202 Wis. 2d 233, 237, 549 N.W.2d 718 (1996).

### III. DISCUSSION

#### A. Conviction on Count I

¶ 29. Campbell was convicted of interfering with the legal custody of Randy, contrary to Wis. Stat. § 948.31(1)(b) (1997–98). This conviction is not in dispute. It is important because of its relationship to Count III.

#### B. Conviction on Count III

¶ 30. Campbell was convicted of bail jumping, contrary to Wis. Stat. § 946.49(1)(b) (1997–98). This statute provides that whoever, having been released from custody on a criminal charge under Chapter 969, intentionally fails to comply with the terms of his bond,

is guilty of a felony if the offense with which he was charged was a felony. Wisconsin Stat. § 969.02(4) provides that, "As a condition of release in all cases, a person released under this section shall not commit *any* crime." (Emphasis added.) Campbell stipulated that he was on release for a felony at the time he allegedly violated § 946.49(1)(b), and he was convicted at trial of Count I. Campbell does not appeal his conviction on Count I for interfering with Denise's legal custody of Randy. Thus, we see no plausible challenge to Campbell's conviction for bail jumping.

## C.   Conviction on Count II

¶ 31.   The heart of this case is Campbell's challenge to Count II, parental interference with the legal custody of Cody. Wisconsin Stat. § 948.31(1)(b) (1997–98) reads:

> [W]hoever intentionally . . . takes a child away or withholds a child for more than 12 hours beyond the court-approved period of physical placement or visitation period from a legal custodian with intent to deprive the custodian of his or her custody rights without the consent of the custodian is guilty of a Class C felony.

¶ 32.   In 1997 Campbell repeatedly challenged the validity of his wife's standing as the adoptive mother of Cody before the Walworth County Family Court. He claimed the Missouri adoption was invalid because it had been obtained by fraud. He also claimed that Vickie's rights to Cody had never been terminated. Hence, he claimed that Denise misrepresented her status as Cody's adoptive mother when she petitioned the court for a divorce, sought sole custody and primary placement of Cody, and alleged that "[t]wo children have been born or adopted by the parties to the mar-

116

riage[.]" In effect, Campbell claimed that every time Denise said she was the adoptive mother of Cody, she was committing a fraud on the court, thereby invalidating the family court's custody order and custody determinations of September 22, November 11, and December 23, 1997. Thus, Campbell contends that when the circuit court excluded evidence of Denise's fraud, the court infringed upon his right to present a defense.

¶ 33. The Sixth Amendment and Due Process Clause right to present a defense requires that a defendant be allowed to introduce *relevant* evidence, subject to reasonable restrictions. *United States v. Scheffer,* 523 U.S. 303, 308 (1998). A defendant's right to present a defense is not absolute. *Id.; see also Holmes v. South Carolina,* 126 S. Ct. 1727, 1731 (2006). So long as the rule under which a court excludes evidence is not arbitrary and serves a legitimate state interest, the right to present a defense is not abridged. *Holmes,* 126 S. Ct. at 1731.

¶ 34. The right to present a defense does not require that a defendant be allowed to present irrelevant evidence. *State v. Robinson,* 146 Wis. 2d 315, 332, 431 N.W.2d 165 (1988). "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. Evidence that is not relevant is not admissible. Wis. Stat. § 904.02.

¶ 35. In this case, before Campbell can collaterally attack the family court's custody order for fraud, it must appear that Campbell's collateral attack, if successful, would tend to negate an element of a crime or

117

raise an affirmative defense. In other words, the evidence adduced by the collateral attack must be relevant.

1. Does Campbell's Fraud Allegation Negate The Element of Legal Custody?

¶ 36.  To evaluate whether Denise's alleged fraud negates an element of interfering with legal custody of a child, we first examine the elements of the crime.

¶ 37.  For Campbell to be convicted of interfering with custody of Cody, the State had to prove five elements: (1) Cody was younger than 18 years; (2) Denise had legal custody of Cody under a court order in an action for divorce; (3) Campbell took Cody from Denise and withheld him from Denise without her consent for more than 12 hours past the time allowed by the custody order; (4) Campbell took Cody away from Denise intentionally; and (5) Campbell knew that Denise had legal custody of Cody under a court order and knew that Denise had not consented to him withholding Cody. *See* Wis JI—Criminal 2166. Campbell asserts Denise never had legal custody of Cody, which implicates the second and fifth elements.

¶ 38.  Campbell challenges the exclusion of evidence that Denise lied to the family court commissioner and procured the custody order through fraud. Specifically, he claims that Denise misrepresented to the court that she was Cody's adoptive mother. This alleged misrepresentation, in turn, originated in an alleged fraud perpetrated on a court in Missouri. Campbell contends that although Denise presented the family court with Missouri adoption papers that declared her the adoptive mother of Cody, these adoption papers were void because Denise and Campbell lived in Wisconsin at the time of the adoption. Campbell posits that

118

if Denise is not Cody's adoptive mother, then the family court commissioner erred in giving her custody and primary placement of Cody. Thus, he argues, if the custody order is invalid, Denise did not have legal custody of Cody, and Campbell did not violate the statute by taking Cody. In short, Campbell insists that the Walworth County custody order was void because of fraud.

¶ 39. The State responds that if Denise committed any fraud, it did not negate an element of the crime of interference with custody unless the fraud was jurisdictional fraud that deprived the family court of subject matter jurisdiction over the action or personal jurisdiction over Campbell. We agree with the State and conclude that since the family court had both subject matter jurisdiction to make the custody determination and personal jurisdiction over Campbell, there was no jurisdictional fraud.

¶ 40. Our analysis begins with the meaning of "legal custody." Once again, Wis. Stat. § 948.31(1)(b) (1997–98), states in part:

> [W]hoever intentionally causes a child to leave, takes a child away or withholds a child for more than 12 hours beyond the court-approved period of physical placement or visitation period from a legal custodian with intent to deprive the custodian of his or her custody rights without the consent of the custodian is guilty of a Class C felony.

Wisconsin Stat. § 948.31(1)(a)1. defines "legal custodian of a child" as "[a] parent or other person having legal custody of the child under an order or judgment in an action for divorce . . . ." "Legal custody" is defined in part as "the right and responsibility to make major decisions concerning the child . . . ." Wis. Stat. §§ 948.01(1r) & 767.001(2)(a).

119

¶ 41. Because Denise had custody of Cody pursuant to a court order, the only way Campbell could negate the second element is if he could show that the order was void and did not need to be obeyed.

¶ 42. Where a valid order or judgment is a necessary condition for one of the elements of a crime, a collateral attack upon the order or judgment can negate an element of the crime if the order or judgment is void. *See State v. Orethun,* 84 Wis. 2d 487, 490–91, 267 N.W.2d 318 (1978); *State v. Jankowski,* 173 Wis. 2d 522, 528, 496 N.W.2d 215 (Ct. App. 1992). A void judgment is a nullity and cannot create a right or obligation. *Kett v. Cmty. Credit Plan,* 222 Wis. 2d 117, 127–28, 568 N.W.2d 68 (Ct. App. 1998) (*affirmed* 228 Wis. 2d 1, 596 N.W.2d 786) (citing *Fischbeck v. Mielenz,* 162 Wis. 12, 17–18, 154 N.W. 701 (1916)). It is not binding upon anyone. *Id.* On the other hand, a voidable judgment has the same force and effect as a valid judgment until it has been set aside. *Id.* at 128 (citing *Slabosheske v. Chikowske,* 273 Wis. 144, 150, 77 N.W.2d 497 (1956)); *Stimson v. Munson,* 251 Wis. 41, 44, 27 N.W.2d 896 (1947) ("The order or judgment, however erroneous, must stand until reversed, modified, or set aside . . . . It is not subject to collateral attack merely because it is erroneous, nor is it void for that reason.") (quoting *Pugh v. Fowlie,* 225 Wis. 455, 471, 274 N.W. 247 (1937)).

¶ 43. As a general rule, a judgment or order is valid—i.e., not void—when the following elements are present: (1) the court has subject matter jurisdiction;[5]

---

[5] *Slabosheske v. Chikowske,* 273 Wis. 144, 150, 77 N.W.2d 497 (1956); *Newcomb v. Ingram,* 211 Wis. 88, 98, 243 N.W. 209 (1933); *State ex rel. R.G. v. W.M.B.,* 159 Wis. 2d 662, 666,

(2) the court has personal jurisdiction;[6] and (3) adequate notice has been afforded the affected persons.[7] *See Restatement (Second) of Judgments* § 1 (1982) (setting forth the requisites for a valid judgment).

¶ 44. Article VII, Section 8 of the Wisconsin Constitution provides that "[e]xcept as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state." This provision recognizes very broad subject matter jurisdiction in circuit courts. Nonetheless, the validity of judgments in these courts is complicated by our concept of "competency," which refers to "the power of a court to exercise its subject matter jurisdiction in a particular case." *See State v. Smith*, 2005 WI 104, ¶ 18, 283 Wis. 2d 57, 699 N.W.2d 508; *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 336, 555 N.W.2d 640 (Ct. App. 1996). In *Mueller v. Brunn*, 105 Wis. 2d 171, 178, 313 N.W.2d 790 (1982), the court stated that "[i]f a court truly lacks only competency, its judgment is invalid only if the invalidity of the judgment is raised on direct appeal." *Mueller,* 105 Wis. 2d at 178. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190, went well beyond *Mueller,* stating that "a lack of competency does not negate subject matter jurisdiction or nullify the

465 N.W.2d 221 (Ct. App. 1990); *see also State v. Bush*, 2005 WI 103, ¶¶ 17–18, 283 Wis. 2d 90, 699 N.W.2d 80 (noting that a court lacks subject matter jurisdiction to enforce a statute that is unconstitutional on its face).

[6] *Slabosheske*, 273 Wis. at 150; *State v. Moline*, 170 Wis. 2d 531, 539, 489 N.W.2d 667 (1992).

[7] *William B. Tanner Co. v. Estate of Earl W. Fessler,* 100 Wis. 2d 437, 446–47, 302 N.W.2d 414 (1981) *(abrogated on other grounds)*; *Wengerd v. Rinehart*, 114 Wis. 2d 575, 587, 338 N.W.2d 861 (Ct. App. 1983).

judgment. Lack of competency is not 'jurisdictional' and does not result in a void judgment." *Mikrut,* 273 Wis. 2d 76, ¶ 34 (citation omitted).

¶ 45.   There are exceptions to these principles about subject matter jurisdiction and competency. For instance, the legislature may try to provide subject matter jurisdiction to the courts but fail by enacting an unconstitutional statute. Thus, if a statute is unconstitutional on its face, any judgment premised upon that statute is void. *See State v. Bush,* 2005 WI 103, ¶¶ 14–19, 283 Wis. 2d 90, 699 N.W.2d 80; *State ex rel. Skinkis v. Treffert,* 90 Wis. 2d 528, 538–39, 280 N.W.2d 316 (Ct. App. 1979). In addition, a criminal complaint that fails to allege any offense known at law is jurisdictionally defective and void. *Bush,* 283 Wis. 2d 90, ¶ 18 (citing *Champlain v. State,* 53 Wis. 2d 751, 754, 193 N.W.2d 868 (1972); *State v. Lampe,* 26 Wis. 2d 646, 648, 133 N.W.2d 349 (1965)).

¶ 46.   There may be other exceptions to the principles about subject matter jurisdiction and competency. But none of this helps Campbell. In this case, for the custody order to be void, the family court would have had to lack subject matter jurisdiction or personal jurisdiction, or Campbell would have had to receive inadequate notice of the divorce proceedings. Nothing of this nature has been alleged. Even if we assume arguendo that Denise misrepresented her status as the adoptive mother of Cody, her misrepresentation would not have deprived the family court of subject matter jurisdiction or personal jurisdiction.

¶ 47.   The family court had subject matter jurisdiction pursuant to Wis. Stat. §§ 767.23(1)(a) and (am) (granting a circuit court commissioner authority to

award legal custody and physical placement), 767.015 (requiring all child custody proceedings to comply with Wis. Stat. ch. 822), and 822.03(1)(a) (granting any court jurisdiction to decide child custody matters where Wisconsin "is the home state of the child at the time of commencement of the proceeding").[8] The record reveals that Denise filed for divorce on September 16, 1997, and the family court commissioner issued the temporary custody order on September 22, 1997. As early as November 5, 1996, Denise and Campbell had established residency in Wisconsin. By the time Denise filed for divorce, Cody had been living in Wisconsin for more than six months, making Wisconsin Cody's home state. Therefore, the family court commissioner had authority to enter the custody order.[9] Wis. Stat. § 767.23(1)(a) and (am).

¶ 48. The family court also had personal jurisdiction over Campbell. A deputy sheriff of Walworth County served the summons and petition for divorce upon Campbell on September 16, 1997. Campbell does not dispute that the family court commissioner had personal jurisdiction over him or that he received adequate notice of the proceedings. Because the family court had subject matter and personal jurisdiction and because Campbell received adequate notice, there was

---

[8] Wisconsin Stat. § 822.02(5) defines "home state" as "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . ."

[9] *See* 28 U.S.C.A. § 1738A (2000) (the Parental Kidnapping Prevention Act, by means of the Supremacy Clause of the United States Constitution, constrains the situations in which a state court may exercise jurisdiction in proceedings that affect child custody); Wis. Stat. § 822.02(5); *Michalik v. Michalik,* 172 Wis. 2d 640, 654, 494 N.W.2d 391 (1993).

no jurisdictional fraud, and the custody order was not void. Denise, therefore, had legal custody of Cody. This is precisely what the circuit court ruled.

¶ 49. Even if the family court commissioner erred in granting custody and primary placement to Denise, Campbell had to abide by the terms of the custody order until he succeeded in reversing it through the applicable review process. *See Orethun,* 84 Wis. 2d at 490 ("Where a court has jurisdiction over the subject matter and the parties, the fact that an order or judgment is erroneously or improvidently rendered does not justify a person in failing to abide by its terms."); *Anderson v. Anderson,* 82 Wis. 2d 115, 118–19, 261 N.W.2d 817 (1978); *cf. Kett,* 222 Wis. 2d at 128 ("A voidable judgment . . . has the same effect and force as a valid judgment until it has been set aside.").

¶ 50. Since Campbell's allegation of fraud, even if true, cannot deprive the family court of subject matter jurisdiction or personal jurisdiction, and cannot render the custody order void, evidence of Denise's alleged fraud cannot negate an element of interference with custody.

2. Does Campbell's Fraud Allegation Raise an Affirmative Defense?

¶ 51. Campbell also contends he should have been allowed to present evidence at trial of Denise's alleged misrepresentation as part of an affirmative defense.[10]

---

[10] An affirmative defense is "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim even if all allegations in the complaint are true." *State v. Watkins,* 2002 WI 101, ¶ 39, 255 Wis. 2d 265, 647 N.W.2d 244 (emphasis omitted). In contrast to a "negative

Campbell argues that, similar to the now-abrogated common law privilege to resist an unlawful arrest, *see State v. Hobson,* 218 Wis. 2d 350, 577 N.W.2d 825 (1998), Wisconsin allows a defendant to disregard an order procured by fraud and then collaterally attack the fraudulently obtained judgment when the judgment supplies the basis for a criminal prosecution. He relies on *Boots v. Boots,* 73 Wis. 2d 207, 243 N.W.2d 225 (1976); *Zrimsek v. American Automobile Insurance Company,* 8 Wis. 2d 1, 98 N.W.2d 383 (1959); *State v. Bouzek,* 168 Wis. 2d 642, 484 N.W.2d 362 (Ct. App. 1992); *Schramek v. Bohren,* 145 Wis. 2d 695, 429 N.W.2d 501 (Ct. App. 1988); and *State v. Madison,* 120 Wis. 2d 150, 353 N.W.2d 835 (Ct. App. 1984), as authority for his collateral attack on the custody order.

¶ 52.  A party's ability to collaterally attack a judgment for fraud has had a checkered history in Wisconsin. Early in Wisconsin jurisprudence, a judgment could not be collaterally attacked for fraud. *Werner v. Riemer,* 255 Wis. 386, 403, 39 N.W.2d 457 (1949) (citing *Cody v. Cody,* 98 Wis. 445, 452, 74 N.W. 217 (1898)). In *Cody* this court held that a judgment could be collaterally attacked only if the court that rendered the judgment lacked jurisdiction. *Id.*

¶ 53.  Subsequently, this court revised the *Cody* rule to permit a party to collaterally attack a judgment that was procured by fraud. *See Boots,* 73 Wis. 2d at 215–16 (discussing the evolution away from the rule in *Cody*). Now, Wisconsin courts may exercise their equitable powers to relieve an aggrieved party from a judgment procured by fraud in a collateral attack if the party "acts seasonably and was without excusable negligence in the action," and where refusing to afford

defense," an affirmative defense does not implicate proof of any of the elements of the crime *Id.,* ¶ 40.

relief would subject the party to an unconscionable judgment. *Weber v. Weber,* 260 Wis. 420, 430–31, 51 N.W.2d 18 (1952); *see also State Cent. Credit Union v. Bayley,* 33 Wis. 2d 367, 373, 147 N.W.2d 265 (1967); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 244–45, 248 (1944) (overruled on other grounds). Thus, "[e]quitable relief against fraudulent judgments . . . is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgments should not be disturbed . . . ." *Hazel-Atlas Glass Co.,* 322 U.S. at 248.

¶ 54. In *Bouzek,* the court quoted at length from *Schramek:*

> A collateral attack is an "attempt to avoid, evade or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it. . . . For [plaintiff] to . . . request consideration in separate proceedings of any cause of action [based on the invalidity of the domestic abuse injunction] would be sanctioning a collateral attack on the order of another [ ] judicial body. [Her] only basis for [an] attack [on the injunction would be] if she had demonstrated fraud in the procurement of the injunctive order.

*Bouzek,* 168 Wis. 2d at 644–45 (quoting *Schramek,* 145 Wis. 2d at 713).

¶ 55. In an earlier criminal case, the court of appeals said: "As a general rule a judgment is binding on the parties and may not be attacked in a collateral action unless it was procured by fraud." *Madison,* 120 Wis. 2d at 154 (citing *Boots,* 73 Wis. 2d at 216). Though the court of appeals has stated in criminal cases that a judgment or order may be collaterally attacked if procured by fraud, the court of appeals has never applied

the rule in these cases. *See Madison,* 120 Wis. 2d at 154; *Bouzek,* 168 Wis. 2d at 645.

¶ 56.  There are good reasons not to recognize a common law affirmative defense of fraud to interference with child custody.

¶ 57.  One species of affirmative defense—exemplified by self-defense and the now-abrogated privilege to resist unlawful arrest—that courts recognize arises where a person is faced with the difficult decision whether to commit a crime or suffer an injury not otherwise susceptible to effective redress. *See Hobson,* 218 Wis. 2d at 373–80. In *Hobson* the court recognized that the privilege to resist unlawful arrest developed at a time when arrest was likely to lead to illness, torture, or prolonged detention without an opportunity for a hearing. *Id.* at 374. *Hobson,* however, abrogated this privilege because judicial process had advanced to the point that it offered a more effective response to unlawful arrest than physical resistance. *Id.* at 375–76.

¶ 58.  For similar reasons, no affirmative defense for fraud can justify interference with legal custody of a child unless there is a credible threat of physical harm. *See* Wis. Stat. § 948.31(4)(a); *State v. McCoy,* 143 Wis. 2d 274, 295–96, 421 N.W.2d 107 (1988). Adequate judicial processes exist to attack an order or judgment for fraud. In this case, Campbell received a de novo hearing on the family court order in the circuit court. *See* Wis. Stat. § 757.69(8). If he had fully pursued the de novo hearing, he would have received a decision, and he could have sought an appeal of an adverse determination. In addition, he could have attacked the order for fraud after the appeal period lapsed. *See* Wis. Stat. § 806.07.[11] "It is in the courts that disputes [over the custody of children] should be resolved except in those

---

[11] In relevant part, Wis. Stat. § 806.07 provides:

situations where action is required by one parent to protect a child from imminent physical harm." *McCoy,* 143 Wis. 2d at 296.

¶ 59.  Recognition of an affirmative defense entails the balancing of competing policy considerations. We believe the legislature properly balanced the competing policies when it established four affirmative defenses to interference with legal custody of a child. *See* Wis. Stat. § 948.31(4)(a). Interference with legal custody will not result in a conviction where the action:

> 1. Is taken by a parent or by a person authorized by a parent to protect his or her child in a situation in which the parent or authorized person reasonably believes that there is a threat of physical harm or sexual assault to the child;

---

(1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

. . . .

(c) *Fraud,* misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void;

. . . .

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

(2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. . . . This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or *to set aside a judgment for fraud on the court.* (Emphasis added.)

128

2. Is taken by a parent fleeing in a situation in which the parent reasonably believes that there is a threat of physical harm or sexual assault to himself or herself;

3. Is consented to by the other parent or any other person or agency having legal custody of the child; or

4. Is otherwise authorized by law.

Wis. Stat. § 948.31(4)(a).

¶ 60.   None of these legislatively created affirmative defenses applies in this case. There is no suggestion in the record that Denise posed a threat either to the boys or to Campbell; Denise did not consent to Campbell taking the boys to Mexico; and Campbell's actions were not authorized by law. The family court commissioner's custody order was a valid order, with which Campbell was obligated to comply. *See Orethun,* 84 Wis. 2d at 490–91. Campbell's position would require us to overrule cases like *Orethun* and *Anderson,* which held that an injunctive order must be obeyed even if erroneous. *See Orethun,* 84 Wis. 2d at 490.

¶ 61.   Furthermore, even if we were inclined to recognize an affirmative defense to interference with legal custody for fraud, the facts of this case would not warrant relief. Requiring Campbell to obey the custody order does not shock the conscience. Campbell not only raised the question of fraud before the family court commissioner, but also had the opportunity to contest the validity of the custody order at the 1998 de novo hearing in circuit court. Instead of pursuing the de novo hearing, he abandoned judicial process in favor of absconding to Mexico with Randy and Cody in contravention of a valid court order. In short, Campbell should be precluded from litigating the alleged fraud since he

129

already had the opportunity to do so. *Cf. Smith,* 283 Wis. 2d 57, ¶ 22.

¶ 62. Under the facts of this case, we refuse to recognize a common law affirmative defense of fraud.[12] Therefore, the circuit court properly prevented Campbell from collaterally attacking the underlying custody order despite his allegations of fraud. This holding does not eviscerate the *Bouzek* rule; it helps define and give substance to the *Bouzek* rule. Were we to hold otherwise, we would be rewriting decades of law on the operative effect of voidable judgments.

D. Standby Counsel

¶ 63. The second issue we must decide is, under what conditions, if any, may a circuit court impose attorney fees for standby counsel as a condition of a defendant's probation?

¶ 64. In its purest form, standby counsel is primarily an aid to the circuit court. *State v. Lehman,* 137 Wis. 2d 65, 78, 403 N.W.2d 438 (1987). When a defendant chooses to exercise his right to self-representation and relinquish his right to be represented by counsel, the circuit court, acting in its discretion, has the authority to appoint an attorney to act as standby counsel. *Id.* (citing *McKaskle v. Wiggins,* 465 U.S. 168, 184 (1984)). Even if the defendant objects, the circuit court may appoint standby counsel. *Wiggins,* 465 U.S. at 184; *Faretta v. California,* 422 U.S. 806, 834–35 n.46 (1975).

---

[12] Because we have decided that Campbell's fraud allegations cannot establish that the family court lacked jurisdiction, and therefore any evidence he would have presented is not relevant to either negating an element of the crime or establishing an affirmative defense, we need not reach the question of whether the doctrine of unclean hands applies in a criminal proceeding.

When the circuit court appoints standby counsel over the objection of the defendant, it naturally follows that standby counsel functions primarily for the benefit of the circuit court. *See Lehman*, 137 Wis. 2d at 78.

¶ 65. Sometimes—as in this case—a defendant may embrace the appointment of standby counsel. At his initial appearance, Campbell welcomed the appointment of standby counsel, even agreeing to repay the attorney fees of standby counsel.[13]

¶ 66. The role of standby counsel can vary over a wide spectrum, ranging from a warm body sitting beside the defendant throughout trial to participation that is tantamount to that of defense counsel. *See* Anne

---

[13] The following exchange occurred between Circuit Judge James L. Carlson and Campbell:

| THE DEFENDANT: | I understand, because I am pro se, I don't have the advantage of an appropriate counsel. |
| THE COURT: | If—you want a backup attorney? |
| THE DEFENDANT: | A backup attorney would be great if the Court would allow that. |
| | . . . . |
| THE DEFENDANT: | The idea then would be to go pro se with counsel. Simply because there is a very, very specific way that you have to address questions. |
| | . . . . |
| THE COURT: | All right, you just heard the ruling. I'll appoint a court-appointed lawyer. You are subject to repaying that. Do you understand that? |
| THE DEFENDANT: | I understand that, Your Honor. |
| THE COURT: | To the best of your ability. I will set $50 a month at this time. |

Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In the Twilight Zone of the Criminal Justice System*, 75 N.Y.U.L. Rev. 676, 676 (2000). In the present case, Attorney Martin's role was much closer to full-fledged defense counsel than passive observer. Commenting on Attorney Martin's role as standby counsel, the circuit court said:

> I do not know what Judge Carlson had in mind. I many times during the course of my involvement with the Campbell case . . . wished . . . devoutly that Judge Carlson had decided not to appoint stand-by counsel.
>
> There is no way that Mr. Martin was doing anything this court felt was in the court's interest. In fact, he was—[I] literally felt . . . that he had to do just everything for the defendant that the defendant wanted, and he did, um, to an extensive degree where sometimes I felt there's no way I felt Mr. Martin would have raised those issues as a competent counsel. The only reason he was raising them is because he was at the direction of the defendant who was telling him do it.
>
> . . . I make the specific finding that if Mr. Campbell initially said he didn't want counsel, he certainly accepted stand-by counsel; and then instead of saying, okay, you've got him, but I'm not going to use him or I'll use him only a little, he's used him so extensively that the court was literally flabbergasted by that use, and used him in ways that no legitimate counsel would have decided independently to do.
>
> There is, thus, no question in my mind that the appointment of Mr. Martin did not serve the interest of the court exceptionally except to the small degree that Mr. Campbell should have at least somebody to handle—to talk to him about fine points of law.
>
> Martin went way beyond that, way, way beyond that; he served the defendant's interest virtually entirely and followed the directions of the defendant, and

a number of times in court literally pointed out to the court that, hey, he's [Campbell] the boss, that's what I have to do. That is a defense counsel.

. . . He prepared motions. He did legal research. He filed motions. He interviewed and located witnesses. He reviewed files and transcripts. He filed a petition for supervisory writ with the Court of Appeals. He advised evidentiary objections and himself cross-examined a witness as was recalled.

Based on the functional role played by Attorney Martin, the circuit court imposed standby counsel attorney fees upon Campbell as a condition of probation, pursuant to Wis. Stat. § 973.06(1)(e).

¶ 67.  On appeal, Campbell contends a circuit court lacks statutory authority to impose attorney fees of standby counsel as a condition of probation. We disagree. Two statutes—Wis. Stat. §§ 973.06 and 973.09 —confer upon circuit courts the authority to impose attorney fees of standby counsel upon a defendant in certain situations as a condition of probation.

¶ 68.  Wisconsin Stat. § 973.06 authorizes a court to impose certain costs, fees, and surcharges upon a defendant as part of his sentence. Section 973.06(1) provides, in part: "[T]he costs, fees, and surcharges taxable against the defendant shall consist of the following items and no others: . . . (e) Attorney fees payable to the defense attorney by the county or the state."

¶ 69.  Another statute, Wis. Stat. § 973.09, authorizes a court to impose the payment of costs and restitution, upon a defendant, as a condition of probation. Section 973.09(1) provides in part that "[t]he court may impose any conditions which appear to be reasonable and appropriate." Then, more specifically, § 973.09(1g) reads:

133

If the court places the person on probation, the court may require, upon consideration of the factors specified in s. 973.20(13)(a)2. to 5., that the probationer reimburse the county or the state, as applicable, for any costs for legal representation to the county or the state for the defense of the case. In order to receive this reimbursement, the county or the state public defender shall provide a statement of its costs of legal representation to the defendant and court within the time period set by the court.

¶ 70. In considering the relationship between these two statutes, the list of costs authorized in Wis. Stat. § 973.06(1) circumscribes the costs a circuit court may impose as a condition of probation under Wis. Stat. § 973.09(1g). Thus, the court of appeals concluded that it was error for the court to impose one-half the cost of a special prosecutor as a condition of probation. *See State v. Amato,* 126 Wis. 2d 212, 217–18, 376 N.W.2d 75 (Ct. App. 1985). The court noted that § 973.06 replaced statutes that permitted the imposition of the costs of prosecution. *Id.* at 215. The gist of the *Amato* decision is that the specific language of § 973.06(1)(e)— "[a]ttorney fees payable to the defense attorney"— should prevail over the more general language—"costs for legal representation . . . for the defense of the case"—in § 973.09(1g). As a general proposition, we agree with this analysis.

¶ 71. Nonetheless, other cases indicate that neither a defendant nor his attorney can expect to run up the public costs of the court system without consequence. In *State v. Foster,* 100 Wis. 2d 103, 301 N.W.2d 192 (1981), the court imposed the costs of one day's jury fees, using Wis. Stat. § 814.51, upon a defendant who decided to enter a plea "at six o'clock in the evening" on the night before trial. *Id.* at 104. In *House v. Circuit*

134

*Court for Marinette County,* 112 Wis. 2d 14, 331 N.W.2d 859 (1983), the court imposed jury costs on an attorney who failed to show up at a scheduled trial. The first of these cases relied upon a specific statute, *Foster,* 100 Wis. 2d at 108–10, the second relied upon the court's inherent authority to assure the orderly administration of justice. *House,* 112 Wis. 2d at 16. The present case does not implicate these authorities, but the policy embodied in these cases is definitely relevant.

¶ 72.   Wisconsin Stat. § 973.06 permits the court to impose a lengthy list of costs upon an unsuccessful defendant. At sentencing, the court may require a probationer to reimburse the county or the state, as applicable, "for any costs for legal representation . . . for the defense of the case." Wis. Stat. §§ 973.09(1g) and 977.07(2m). We think the term "defense attorney" in § 973.06 is broad enough to cover standby counsel in certain situations.

¶ 73.   A circuit court *may* impose the attorney fees of standby counsel upon a defendant as a condition of probation where either (1) the defendant agrees to reimburse the county for the attorney fees; or (2) the court informs the defendant of his potential liability for the fees *and* the defendant uses standby counsel so extensively that he or she functions as traditional defense counsel. By requiring one of these two prerequisites to be present, a court will achieve the proper balance between a defendant's right to represent himself and the public's right to the orderly and efficient administration of justice.

¶ 74.   There is no dispute that a defendant has a constitutional right to defend himself. *Faretta,* 422 U.S. at 817. A defendant also has a right to an attorney at public expense if he cannot afford an attorney. *Gideon v.*

135

*Wainwright,* 372 U.S. 335 (1963); *Carpenter v. County of Dane,* 9 Wis. 274 (1859). In *Moore v. State,* 83 Wis. 2d 285, 300, 265 N.W.2d 540 (1978), this court held that a defendant "has no constitutional *right* to be actively represented in the courtroom both by counsel and by himself." *Id.* (emphasis added). When this double-barrel representation occurs, however, the circuit court cannot be deprived of the ability to attempt to recoup some of the public costs. If the court were deprived of the ability to hold an unsuccessful defendant accountable for this sort of dual representation, some defendants who could afford to pay for their own attorney would resort to the same tactics employed by Campbell in an effort to dodge financial responsibility.

¶ 75.   In this case, the circuit court appointed Attorney Martin much as a court would appoint traditional defense counsel. After Campbell asserted he was indigent, and after the circuit court decided to appoint standby counsel, the circuit court informed Campbell of his obligation to pay the attorney fees, subject to his ability to pay. *Cf.* Wis. Stat. § 977.07(2m).

¶ 76.   Campbell welcomed the court-appointed standby counsel and agreed to pay his attorney fees. By welcoming court-appointed standby counsel and heavily utilizing him throughout the proceedings, Campbell effectively converted Attorney Martin into his co-counsel. Although we have recognized that the "chief purpose" of standby counsel in most cases is to "serve the interests of the trial court," *Lehman,* 137 Wis. 2d at 78, this is not always the case and it was not the case here. As the circuit court's summary of Martin's performance indicates, while Martin may have been appointed initially for the assistance of the circuit court, he became Campbell's

agent almost immediately. Thus, although nominally acting as standby counsel, Campbell functioned as an attorney for the defendant.

¶ 77.  Where a defendant agrees to reimburse the county for the attorney fees of standby counsel or the circuit court informs the defendant of his potential liability for the fees and the defendant uses standby counsel so extensively that he or she functions as traditional defense counsel, Wis. Stat. §§ 973.06(1)(e) and 973.09(1g) give a circuit court the authority to impose the attorney fees of standby counsel as a condition of probation. *Cf. Mincey v. Florida,* 684 So.2d 236 (Fla. 1996). Where, however, a defendant does not agree to reimburse the county for the attorney fees, or is not informed of his potential obligation to pay the attorney fees of standby counsel, a circuit court may not impose attorney fees as a condition of probation, under the plain language of Wis. Stat. § 973.06(1)(e). When standby counsel acts primarily for the benefit of the court rather than as an attorney serving the defendant, attorney fees for standby counsel are inappropriate.

¶ 78.  In this case, Campbell agreed to pay the attorney fees of standby counsel, satisfying the first test. In addition, the court informed Campbell of his obligation to reimburse the county for the fees and he made extensive use of Attorney Martin, satisfying the second test. Under either test, therefore, Campbell is responsible for Attorney Martin's fees, subject only to his ability to pay.

¶ 79.  Both this court and the United States Supreme Court have found that as a condition of probation a defendant may be required to pay the attorney fees of a public defender. *Fuller v. Oregon,* 417 U.S. 40,

137

53–54 (1974); *State v. Gerard,* 57 Wis. 2d 611, 626, 205 N.W.2d 374 (1973). Before doing so, however, a circuit court must evaluate the defendant's ability to pay. Wis. Stat. §§ 973.09(1g) and 973.20(13)(a)2. to 5.

¶ 80.   A court should do no less before imposing the attorney fees of standby counsel upon a defendant. Thus, the circuit court must consider (1) "[t]he financial resources of the defendant[;]" (2) [t]he present and future earning ability of the defendant[;]" (3) "[t]he needs and earning ability of the defendant's dependents[;]" and (4) "[a]ny other factors which the court deems appropriate[,]" before imposing attorney fees of standby counsel. *See* § 973.20(13)(a)2. to 5. Because the circuit court imposed the full amount of Attorney Martin's fees, $17,585.35, upon Campbell without determining his ability to pay, we remand this matter to the circuit court for further proceedings consistent with this proceeding.

## IV. CONCLUSION

¶ 81.   We affirm Campbell's convictions for interference with Denise's legal custody of Cody and bail jumping. The circuit court properly prevented Campbell from collaterally attacking the custody order that awarded Denise legal custody. Because Campbell's allegations of fraud do not tend to negate any element of a crime and do not constitute an affirmative defense, the circuit court properly excluded evidence of the alleged fraud and prevented Campbell from collaterally attacking the custody order.

¶ 82.   Furthermore, because Campbell's conviction for interference with Denise's legal custody of Randy—a conviction he does not challenge—is sufficient to support his conviction for bail jumping, we affirm his conviction for bail jumping.

¶ 83. We also conclude that in exercising its discretion to appoint standby counsel, a circuit court *may* impose the attorney fees of standby counsel upon a defendant as a condition of probation where either (1) the defendant agrees to reimburse the county for the attorney fees; or (2) the court informs the defendant of his potential liability for the fees *and* the defendant uses standby counsel so extensively that he or she functions as traditional defense counsel. Under both alternatives, however, before imposing fees the court must determine the defendant's ability to pay pursuant to Wis. Stat. § 973.20(13)(a)2. to 5. Because that determination was not made in this case, we remand to the circuit court to evaluate Campbell's ability to pay.

*By the Court.*—The judgment and order of the circuit court are affirmed and the cause is remanded.

¶ 84. LOUIS B. BUTLER, JR., J. *(concurring in part, dissenting in part).* I join that portion of the majority opinion which affirms the judgments of conviction in this case. I write separately because I strongly disagree with the majority's conclusion that a circuit court has the authority to impose attorney fees for standby counsel as a condition of a defendant's probation. Majority op., part III D, ¶¶ 63–80. I therefore dissent from that portion of the opinion.

I

¶ 85. During his continued initial appearance on June 19, 2001,[1] defendant John Campbell (Campbell) appeared pro se, having filed a request to appear pro se.

---

[1] The record does not contain any transcript of the earlier proceeding that was apparently adjourned.

Campbell also filed a signed "Waiver of Right to Attorney" form.[2] At the continued initial appearance, the trial court asked Campbell if he had ever studied evidence, civil procedure, or criminal procedure, to which Campbell responded that he had not, but noted that the defendant in *Faretta v. California,* 422 U.S. 806 (1975), had the same problem. The circuit court judge agreed that Campbell had a right to represent himself. The court then stated as follows:

> I want to make sure that you have a fundamental understanding of the Rules of Procedure, because you have to follow them. And you have to select the jury. We have a jury trial: Make your strikes; ask the appropriate questions. You can't just get away with asking questions in a free-lance way and get in evidence people using attorneys do and following the rule would get in, and –

¶ 86. Campbell noted that because he was pro se, he did not "have the advantage of an appropriate counsel." The circuit court then asked if he wanted a "backup attorney." Campbell responded that "[a] backup attorney would be great if the court would allow that." The following colloquy then took place:

THE COURT: Well, I've done that in the past. Are you – I don't know if you've asked for an attorney. I don't know if you're indigent.

---

[2] On the waiver form, Campbell indicated that he was a 48–year-old youth pastor with some college education, who understood that an attorney could be of assistance to him in regards to preparing a defense, presenting motions, or negotiating with the prosecutor. While he indicated that he did have questions that he would like to ask the court, he nevertheless signed the form on June 18, 2001, the day before the continued initial appearance.

THE DEFENDANT: I am indigent, Your Honor. I'm a minister. We don't make a hundred dollars a week. And that's doing a couple of funerals in California. . . .

THE COURT: Did you, did you fill out a form here that shows your indigency?

THE DEFENDANT: Yes.

. . . .

THE DEFENDANT: The idea then would be to go pro se with counsel. Simply because there is a very, very specific way that you have to address questions.

THE COURT: I just had a trial that way. And, first of all, the defendant used the defense counsel and used their law books and their lawyer's ability to help them do the research, and handle the case themselves. So that's a possibility.

¶ 87. The circuit court engaged Campbell in a dialogue that appears to have discussed the indigency form filled out by Campbell. The court then determined that Campbell wanted to represent himself and stated, "I will appoint a court-appointed lawyer. . . . I don't know, you might qualify for [a] Public Defender. I think he would – you should give the Public Defender a call." A public defender then responded, "[j]udge, public defenders don't do backups." Following a discussion off the record, the circuit court appointed "a court-appointed lawyer[,]" subject to repayment.

141

¶ 88. According to the transcript, the circuit court never determined whether Campbell was indigent,[3] never made a finding that Campbell freely, voluntarily, and understandingly waived counsel, and never determined that Campbell was competent to represent himself at trial.[4] *See State v. Klessig,* 211 Wis. 2d 194, ¶ 14, 564 N.W.2d 716 (1997). The circuit court order for standby representation, filed June 19, 2001, provides as follows:

> WHEREAS, this court has determined that the interests of justice and efficient operation of the court require that [Campbell] be represented by standby counsel;

> THEREFORE IT IS HEREBY ORDERED that James Martin [] be, and is, appointed to represent the defendant as standby counsel . . .

¶ 89. There is no such thing as a "backup attorney." This court has already held that a defendant "has

[3] According to the United States Department of Health and Human Services, Campbell's 2001 income was less than half of the federal poverty guidelines for that year. 66 *Federal Register* 10695–10697 (February 16, 2001).

[4] The parties have not raised these issues. I mention them because it is not clear what the court meant when it ordered that Campbell be "represented by standby counsel." In the absence of a clear finding of waiver of the right to counsel or a determination of Campbell's competence to represent himself, was the circuit court appointing Attorney Martin to represent Campbell? If so, was Campbell deprived of his right to represent himself? Should the majority engage a *Wiggins* analysis to determine whether Campbell was truly in control of his defense? *McKaskle v. Wiggins,* 465 U.S. 168 (1984). If, on the other hand, the circuit court appointed Attorney Martin to merely act as standby counsel, then how can the circuit court order the payment of standby counsel fees when the cost statute prohibits such an order? *See* Part III, *infra.*

no constitutional right to be actively represented in the courtroom both by counsel and himself." *Moore v. State,* 83 Wis. 2d 285, 300, 265 N.W.2d 540 (1978). Counsel could either represent Campbell, or counsel could assist Campbell in representing himself. Counsel could not do both.

¶ 90. Here is the problem: if the court appointed standby counsel to "represent" Campbell, as stated in the order, then his constitutional right to represent himself has been interfered with. If, on the other hand, the court appointed counsel to act as "standby counsel" for Campbell, then Wis. Stat. § 973.06(1) precludes repayment for the cost of counsel.

## II

¶ 91. The Sixth Amendment to the United States Constitution and Article I, section 7 of the Wisconsin Constitution give a criminal defendant the right to conduct his or her own defense. *Klessig,* 211 Wis. 2d at 203. That right "exists to affirm the accused's individual dignity and autonomy." *McKaskle v. Wiggins,* 465 U.S. 168, 176–77 (1984). "The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174.

¶ 92. As the majority notes, when a defendant chooses to exercise his or her right to self-representation and relinquish the right to be represented by counsel, the circuit court, acting in its discretion, has the authority to appoint an attorney to act as standby counsel. Majority op., ¶ 64. Contrary to the majority's assertions, that appointment is for the purpose of assisting the court. *Wiggins,* 465 U.S. at 184;

*State v. Lehman,* 137 Wis. 2d 65, 83, 403 N.W.2d 438 (1987). *Compare* majority op., ¶¶ 65–66. Such a decision must be based on a determination that the needs of the trial court, and not the defendant, would be best served by doing so. *Lehman,* 137 Wis. 2d at 77.

¶ 93. The United States Supreme Court has expressly recognized that standby counsel can have a very active role in the conduct of criminal proceedings when defendant and standby counsel disagree, as well as when the defendant embraces the actions of standby counsel. In *Wiggins,* the Court noted that during the trial outside the presence of the jury, "[o]n several occasions Wiggins expressly adopted standby counsel's initiatives. . . . On several other occasions Wiggins strongly opposed the initiatives of counsel." *Wiggins,* 465 U.S. at 180. Conflicts were resolved in favor of the defendant, thereby leaving him in control over his defense. *Id.* at 181.

¶ 94. Of more concern to the *Wiggins* Court was standby counsel's participation during the trial in the presence of the jury. *Id.* The Court recognized that the right of self-representation is not infringed when standby counsel assists the pro se defendant in overcoming procedural or evidentiary obstacles at trial, or helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure. *Id.* at 183. Accordingly, the court concluded as follows:

> A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals.

*Id.* at 184.

¶ 95. The majority in this action construes Attorney Martin's role in this case as being "much closer to full-fledged defense counsel than passive observer." Majority op. at ¶ 66. The majority concludes that by welcoming court-appointed standby counsel and heavily using him throughout the proceedings, Attorney Martin became a defense attorney for Campbell. *Id.,* ¶ 76. If the majority is correct, then Campbell may have been deprived of his right of self-representation. Campbell either represented himself, or he didn't. The majority cannot have it both ways.

¶ 96. If the circuit court appointed Attorney Martin to "represent" Campbell without telling him, then this court must explore a *Wiggins* analysis to determine whether Campbell was in control of his defense. If he was, then Attorney Martin truly acted as standby counsel. If, on the other hand, counsel took control over the defense, then Campbell has been deprived of his right of self-representation. Attorney Martin cannot fulfill both roles, and the circuit court did not (and could not) appoint Attorney Martin to act as co-counsel. Because I conclude that the role played by Attorney Martin was consistent with the role of standby counsel recognized in *Wiggins,* I therefore conclude that standby counsel here was just that, standby counsel. To conclude otherwise would require that the defendant receive a new trial, as a violation of the right of self-representation is not subject to the harmless error rule. *Wiggins,* 465 U.S. at 177 n.8.

### III

¶ 97. The majority correctly concludes that Wis. Stat. §§ 973.06(1) and 973.09(1g) must be read together to determine whether a circuit court has the authority

145

to order Campbell to pay as a condition of probation the costs of standby counsel. Majority op., ¶¶ 67–70. The court of appeals has already held, and the majority agrees, as a general proposition, that the exclusive list for costs authorized in Wis. Stat. § 973.06(1) circumscribes the costs a circuit court may impose as a condition of probation. *Id.*, ¶ 70 (citing *State v. Amato,* 126 Wis. 2d 212, 217–18, 376 N.W.2d 75 (Ct. App. 1985)). The reason for such a rule is expressly set forth by the statute: "Except as provided in s. 93.20,[5] the costs, fees, and surcharges taxable against the defendant shall consist of the following items *and no others*[.]" Wis. Stat. § 973.06(1) (emphasis added). *See also State v. Neave,* 220 Wis. 2d 786, 790, 585 N.W.2d 169 (Ct. App. 1998). Thus, the decision on this issue hinges upon this court's interpretation of § 973.06(1)(e): "[a]ttorney fees payable to the defense attorney by the county or the state."

¶ 98.   The majority concludes that "the term 'defense attorney' in § 973.06 is broad enough to cover standby counsel in certain situations." Majority op., ¶ 72. I respectfully disagree. As previously noted, the decision to appoint standby counsel should be based on a determination that the needs of the trial court and not the defendant would be best served by doing so. *Lehman,* 137 Wis. 2d at 77. Indeed, that was done in this case. The circuit court appointed Attorney Martin for Campbell in "the interests of justice and efficient operation of the court[.]" The *Lehman* court used the term "assist" the defendant to describe the role of standby counsel, and used that term broadly. *Id.* at 79–80. As Wis. Stat. § 973.06(1)(e) provides for "attorney fees payable to the defense attorney[,]" "and no others[,]"[6] no

---

[5] This section is not applicable.

[6] Wis. Stat. § 973.06(1).

statutory provision exists that authorizes the payment of costs by the defendant for standby counsel appointed to assist the court by assisting the defendant.

¶ 99.   The question of who pays for standby counsel has already been addressed and decided by this court. In *Lehman,* this court agreed that, with the exception of Wis. Stat. § 753.19,[7] no other statutory provision provides for the payment of the fees for standby counsel. *Id.* at 83. That statute provides that "[t]he cost of operation of the circuit court for each county . . . except as otherwise provided, shall be paid by the county." Wis. Stat. § 753.19. This court reasoned that "the services rendered by the standby counsel are actually services to the court." *Lehman,* 137 Wis. 2d at 83. This court stated that since the "trial judge determined that the appointment of standby counsel was essential, . . . the resulting fees were a 'necessary cost of the operation of the court. . . . ' " *Id.* The court thus concluded that the duty of payment fell upon the county under Wis. Stat. § 753.19. *Id.*

¶ 100.   For the reasons stated, Attorney Martin was not the defense attorney in this matter. As such, the circuit court lacks the authority to order Campbell to pay for the costs of standby counsel as a condition of probation. Other than Wis. Stat. § 753.19, no other statutory provision provides for the payment of the cost of standby counsel. Consequently, the circuit court erred in ordering Campbell to pay for Attorney Martin's services as a condition of probation.

---

[7] Wisconsin Stats. § 753.19 reads as follows:

The cost of operation of the circuit court for each county, except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40 and 230, and except as otherwise provided, shall be paid by the county.

¶ 101.　For the foregoing reasons, I dissent from that portion of the majority opinion dealing with costs.

¶ 102.　I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurring in part, dissenting in part opinion.