COURT OF APPEALS
DECISION
DATED AND FILED

May 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP204-CR**
**2021AP205-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2016CF4584
2017CF1369

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

KEVIN M. ROBINSON,

      DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ and CAROLINA STARK, Judges. *Affirmed*.

Before Brash, C.J., Dugan and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Kevin M. Robinson appeals his judgments of conviction for human trafficking, two counts of trafficking a child, kidnapping, armed burglary as a party to a crime, attempted armed robbery as a party to a crime, and misdemeanor battery. He also appeals from an order denying his postconviction motion.[1]

¶2     Robinson argues that the trial court violated his right to self-representation, that his standby counsel was ineffective, and that the evidence was insufficient to support one of his convictions for trafficking a child. He further asserts that he is entitled to a new trial in the interests of justice. Upon review, we affirm.

## BACKGROUND

¶3     The charges against Robinson stem from the human trafficking of three victims—two children (G.T. and A.L.) and one adult (J.F.)—in 2015 and 2016. Robinson was also charged with false imprisonment and misdemeanor battery for beating J.F. in December 2016, and with the kidnapping of G.T. in July 2015. Additionally, Robinson was charged with armed burglary as a party to a crime and attempted armed robbery as a party to a crime relating to the home invasion of a residence on North 24th Street in Milwaukee, where G.T. had been staying. The State described these crimes as "retribution" after G.T. had escaped from Robinson, and he accused her of stealing money from him when she escaped.[2]

---

[1] Robinson's trial was before the Honorable Carolina Stark, and we refer to her as the trial court. Robinson's postconviction motion was decided by the Honorable Janet C. Protasiewicz, as the successor court to Judge Stark; we refer to Judge Protasiewicz as the postconviction court.

[2] The charges against Robinson were filed in two different cases, which were subsequently joined.

¶4 Prior to trial, Robinson made a request to exercise his right to self-representation. After an extensive colloquy with Robinson, the trial court found him competent to represent himself. The court also appointed standby counsel.

¶5 The matter proceeded to a jury trial in December 2017, with Robinson representing himself. The State's witnesses included two of the trafficking victims—G.T. and J.F.—as well as M.R., who was arrested for prostitution with A.L. The victim from the armed home invasion, T.O., also testified. Additionally, testimony was heard from a police detective who was called as an expert in human trafficking, and who had interviewed the three victims.

¶6 Robinson testified in his own defense. He admitted to soliciting J.F. for prostitution, but stated that he then fell "madly in love" with her. He also admitted to hitting her during a "domestic dispute[.]"

¶7 During closing arguments, the State objected to several statements by Robinson, including: that he suffered from "constant sex issues," which the State noted was not a fact in evidence; that the jury should "not allow a miscarriage of justice for an innocent life hangs in the very balance," which the State asserted improperly discussed penalty consequences; and that God had chosen the jurors "to be bearers of truth and light."

¶8 Robinson then began a general attack on prosecutors, stating that they are people who "pursue[] relentless without regard guilty and innocence alike, [sic]" and alleging that the prosecutor's office was under investigation for wrongful convictions. At that point, the trial court excused the jury and informed Robinson that his line of argument was not permissible.

¶9 The trial court explained that closing arguments "must be limited to arguments about the evidence received, the legal instructions that the [c]ourt has

given the jury and how the legal instruction applies to the evidence, whether or not the State has met its burden of proof on any of the elements or not." The court further clarified those limits, stating that closing arguments are "not an opportunity to comment on the district attorney's office generally," noting that it was not relevant to this case whether there was anyone in the district attorney's office who was under investigation.

¶10 The trial court also specifically addressed the State's earlier objections. With regard to Robinson's attempt to introduce additional information, the court stated again that he was allowed to argue only facts that were received into evidence. The court also noted the objection regarding Robinson's reference to God, noting "it isn't God that has bestowed [this task on the jury]; it's the law, our legal system." The court further explained that Robinson was not to "argue to the jury anything related to the consequences of the verdicts," because such consequences are not for consideration by the jury, but rather are for the court to consider.

¶11 During this exchange, the trial court warned Robinson—twice—that if he pursued arguments "outside of the limits or boundaries of closing arguments again, [he] will not be allowed to continue closing arguments; and then [standby counsel] would take over any closing arguments." Robinson indicated that he understood.

¶12 The jury was called back in, and Robinson continued with his closing argument. However, when Robinson made a comment about the testimony of one of the victims, stating that she was lying "in hopes of taking what little I have left— my life, my livelihood, my well being," the State objected, referencing the direction given to Robinson by the trial court that he was not to present any argument relating to the consequences of the verdicts. The court then ordered standby counsel to take

4

over the closing argument. The court subsequently stated for the record that its reasoning for rescinding Robinson's right to self-representation was that "he was starting to make argument[s] about consequences of potential verdicts, specifically guilty verdicts," which it had previously explained to him was not permissible during closing arguments.

¶13 Thus, Robinson's standby counsel took over the closing argument. He first noted that Robinson had "done well" in presenting his closing argument, but that there were "certain rules, things that you aren't supposed to say; and he's violated some of those rules." Counsel then stated it was clear from Robinson's testimony that he had "made some bad choices as far as women," noting that Robinson "told you in so many words that flesh is weak, and he admits soliciting women for sex." However, counsel pointed out that Robinson was not charged with soliciting, but rather was charged with trafficking, and argued that the State had failed to prove that.

¶14 Counsel further argued that the State's witnesses lacked credibility and did not prove the charges as brought by the State. Counsel also conceded the battery charge relating to J.F., noting that Robinson had testified that he had "lost his cool" and hit J.F., but that he had "apologize[d] for becoming aggressive and physical." Counsel then stated "[t]hat's a battery—guilty as charged," but observed "there is a big difference between a battery and being a John soliciting and human trafficking where you are the pimp; and you are getting everything and running the show."

¶15 In rebuttal, the State declared "I am going to be sick because that was the weakest, most ridiculous, low-budget, bargain basement attempt at a defense I have heard in a long time." The State further observed "who even knows whose

5

argument it is, is it the defendant's or [standby counsel's]? I mean, who—what kind of traveling circus is this defense anyway?"

¶16 The jury convicted Robinson on all counts. The trial court imposed a sentence for all counts totaling over eighty-four years of imprisonment.

¶17 Robinson, represented by appellate counsel, filed a postconviction motion in October 2020, seeking a new trial. He argued that his constitutional right to self-representation was violated when the trial court revoked this right during his closing argument. Robinson further argued that standby counsel was ineffective when he took over the closing argument because counsel failed to consult with Robinson prior to proceeding; he also conceded Robinson's guilt to the battery charge, and failed to object to the State's comments during its rebuttal to his closing argument.

¶18 The postconviction court rejected Robinson's arguments. The court noted that the trial court "took the steps of removing the jury to clearly and thoroughly explain to [Robinson] what he was allowed to argue to the jury in his closing argument," along with providing "examples to illustrate proper and improper closing arguments," as well as "twice specifically warn[ing] [Robinson] that his failure to follow the rules would result in [standby counsel] taking over the closing argument." The court observed that Robinson had "nevertheless proceeded to set forth an argument that had been specifically identified by the [trial] court as impermissible." Therefore, the postconviction court found that the trial court had not erroneously exercised its discretion in rescinding Robinson's right to self-representation.

¶19 The postconviction court also rejected Robinson's claim of ineffective assistance of his standby counsel, stating that Robinson had failed to adequately

demonstrate that he had been prejudiced by any of the alleged deficiencies. Therefore, the court denied Robinson's motion without a hearing. This appeal follows.

## DISCUSSION

¶20 On appeal, Robinson again raises the arguments in his postconviction motion. Additionally, he asserts that there was insufficient evidence to support his conviction regarding trafficking of a child relating to A.L., who did not testify. He also contends that he is entitled to a new trial in the interest of justice. We address these arguments in turn.

*Right to Self-Representation*

¶21 We first address Robinson's argument that the trial court erred in rescinding his right to self-representation during his closing argument.[3] Defendants have the right to conduct their own defense under both the Sixth Amendment of the United States Constitution and Article I, § 7 of the Wisconsin Constitution. *State v. Klessig*, 211 Wis. 2d 194, 201-02, 564 N.W.2d 716 (1997); *see also Faretta v.*

---

[3] The State argues that Robinson forfeited his right to challenge the trial court's termination of his right of self-representation by failing to object when standby counsel took over. However, the denial of the right to self-representation is a structural error, and generally such errors cannot be forfeited, but rather must be waived. *See State v. Pinno*, 2014 WI 74, ¶¶48-50, 356 Wis. 2d 106, 850 N.W.2d 207.

Nevertheless, the State asserts that the holding in *Pinno*—that the right to a public trial can be forfeited if a defendant fails to object—can be applied in the present case with regard to the issue of the rescission of standby counsel. *See id.*, ¶57. In support of its argument, the State relies on federal case law from other jurisdictions, in particular *Lefevre v. Cain*, 586 F.3d 349, 356-57 (5th Cir. 2009) (a defendant who was shackled could have objected to standby counsel's participation in a bench conference in his stead but failed to do so, and therefore waived his right to self-representation by acquiescing to counsel's participation), and *United States v. Isaac*, 655 F.3d 148, 154 (3d Cir. 2011) (where the defendant "raised no objection and acquiesced to standby counsel's participation" in a sidebar conference). However, we decline to extend *Pinno* or adopt case law from other jurisdictions where the facts are distinguishable. We thus choose to decide this issue on the merits.

7

*California*, 422 U.S. 806, 819 (1975) (although not expressly stated in the Sixth Amendment, "the right to self-representation—to make one's own defense personally—is … necessarily implied by the structure of the Amendment"). Whether a defendant's constitutional right to self-representation has been violated is a question of law that we review *de novo*. **State v. Darby**, 2009 WI App 50, ¶13, 317 Wis. 2d 478, 766 N.W.2d 770.

¶22    When a defendant seeks to exercise the right of self-representation, the trial court must establish that the defendant "(1) has knowingly, intelligently and voluntarily waived the right to counsel, and (2) is competent to proceed *pro se*." **Klessig**, 211 Wis. 2d at 203.  If the court determines that both of these criteria have been met, the defendant's request for self-representation must be granted.  **Id.** at 204.  Nevertheless, the court, "acting in its discretion, has the authority to appoint an attorney to act as standby counsel." **State v. Campbell**, 2006 WI 99, ¶64, 294 Wis. 2d 100, 718 N.W.2d 649.  Standby counsel is "primarily an aid to the [trial] court." **Id.**  Thus, the scope of the duties of standby counsel is within the discretion of the trial court.  **State v. Lehman**, 137 Wis. 2d 65, 81, 403 N.W.2d 438 (1987).

¶23    For instance, standby counsel may be appointed "to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." **Faretta**, 422 U.S. at 834 n.46.  To that end, a defendant's right to self-representation may be terminated by the trial court if that defendant "deliberately engages in serious and obstructionist misconduct." **Id.**  This is because the right to self-representation may be exercised "provided … that [the defendant] is able and willing to abide by rules of procedure and courtroom protocol." **McKaskle v. Wiggins**, 465 U.S. 168, 173 (1984).  Put another way, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom.

Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46.

¶24 Here, Robinson's closing argument elicited many objections by the State for impermissible arguments. While not all of those objections were sustained by the trial court, the court did at one point excuse the jury to address those issues with Robinson. However, even after the court's thorough explanation regarding impermissible arguments—including examples—and twice warning Robinson of the consequences for making impermissible arguments, the record indicates that his closing continued to cross the line. For example, he persisted with personal attacks on the prosecutor, accusing her of lying and being "extremely disrespectful and impolite" to him when he testified, stating that she was "domineering and tried to express control over [him] continuously." He further asserted that this case was a "personal ambush" by the prosecutor whose "intentions this whole time have been to subdue [him]." Additionally, he attacked the detective who testified as an expert witness and had interviewed the victims, asserting that she "coerced" the victims and had "instigated the whole crime." The court finally terminated his closing argument when he again began to argue the potential consequences of the verdict.

¶25 We conclude that this demonstrates serious and obstructionist misconduct on the part of Robinson. *See Faretta*, 422 U.S. at 834 n.46. At the time the trial court excused the jury during closing arguments, the court was very clear in its explanation to Robinson of what may and may not be argued. Yet, Robinson continued to include arguments outside of what the court had told him was permissible, including personal comments about the prosecutor and the State's expert witness, as well as the consequences of the verdicts. These statements did not involve the evidence received during the trial, the legal instructions given to the

9

jury, or how those instructions apply to the evidence relative the elements of the crimes that the State had to prove.

¶26    In other words, Robinson's conduct indicated that he was unwilling to "comply with relevant rules of procedural and substantive law," and demonstrated his propensity to "to abuse the dignity of the courtroom." *See id.* Therefore, we conclude that Robinson's right to self-representation was not violated when the trial court rescinded that right during his closing argument.

*Ineffective Assistance of Standby Counsel*

¶27    Robinson next argues that his standby counsel was ineffective when he took over the closing argument because he did not consult with Robinson prior to proceeding with the closing, he conceded Robinson's guilt to the battery charge, and he failed to object to the State's rebuttal to the closing argument.[4]

¶28    To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." ***State v. Allen***, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" ***State v.***

---

[4] The State argues that Robinson cannot bring an ineffective assistance of counsel claim regarding his standby counsel, on the basis that "[a] defendant has a right to representation by counsel or to self-representation, but not both," citing ***Moore v. State***, 83 Wis. 2d 285, 300, 265 N.W.2d 540 (1978). However, Robinson's claims of ineffective assistance involve conduct by counsel *after* Robinson's right of self-representation was rescinded. ***Moore*** does not address this type of representation situation, nor do the federal cases cited by the State. Furthermore, we found no case law that addressed circumstances similar to those in this case. Therefore, we conclude that because Robinson's standby counsel was no longer acting in that capacity at the time of the challenged conduct, but rather was acting as counsel, Robinson is not precluded from raising his claims of ineffective assistance.

*Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶29 A claim of ineffective assistance of counsel requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. This is a question of law that we review *de novo*. *Id.*, ¶9.

¶30 If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. *Id.* We will uphold such a discretionary decision if the trial court "has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *Bentley*, 201 Wis. 2d at 318.

¶31 With regard to Robinson's first claim—that standby counsel failed to consult with him prior to taking over the closing argument—we conclude that it is not adequately pled. A defendant's postconviction motion must allege "sufficient material facts for reviewing courts to meaningfully assess a defendant's claim," which generally should include "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Allen*, 274 Wis. 2d 568, ¶23. Here, Robinson does

11

not explain what he would have discussed with counsel had he consulted with him prior to proceeding with the closing, nor does he allege how counsel's argument failed to further his defense. Indeed, "[a] defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding." *See State v. Provo*, 2004 WI App 97, ¶15, 272 Wis. 2d 837, 681 N.W.2d 272 (citation omitted; brackets in ***Provo***). Robinson's claim cannot succeed without demonstrating that prejudice prong of the ***Strickland*** test. *See **Allen***, 274 Wis. 2d 568, ¶26.

¶32 Robinson's next ineffective assistance claim—that standby counsel's concession of guilt regarding the battery charge was deficient performance—fails for similar reasons. First, Robinson provides no legal authority for this argument and fails to develop it beyond a conclusory statement regarding deficiency. We generally will not consider undeveloped arguments or those unsupported by legal authority, *see **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), and conclusory allegations are not sufficient to warrant an evidentiary hearing, *see **Allen***, 274 Wis. 2d 568, ¶9.

¶33 Moreover, Robinson fails to demonstrate how counsel's concession to the battery charge prejudiced him, as Robinson had already admitted to hitting J.F. during his testimony. "Showing prejudice means showing that counsel's alleged errors actually had some adverse effect on the defense." ***State v. Koller***, 2001 WI App 253, ¶9, 248 Wis. 2d 259, 635 N.W.2d 838. Robinson did not make such a showing here which, again, is fatal to his claim. *See **Allen***, 274 Wis. 2d 568, ¶26.

¶34 Similar reasoning applies to Robinson's final ineffective assistance claim—that counsel was ineffective for failing to object to the State's comments

during its rebuttal argument. In his brief-in-chief, Robinson mentions the State's comments during rebuttal and the fact that his counsel did not object, but he fails to develop any argument relating to this allegation. *See Pettit*, 171 Wis. 2d at 646. In fact, the State pointed out in its brief that Robinson failed to set forth grounds for which an objection to these comments would have been sustained, and Robinson did not respond to that argument in his reply brief. Generally, arguments that are not refuted are deemed to be admitted. *See State v. Alexander*, 2005 WI App 231, ¶15, 287 Wis. 2d 645, 706 N.W.2d 191.

¶35 Furthermore, the trial court instructed the jury that its decision was to be based on the evidence, and that the closing arguments were not evidence. "Jurors are presumed to have followed jury instructions." *State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780. Robinson fails to explain how he was prejudiced by counsel's failure to object to the prosecutor's rebuttal arguments when the trial court specifically explained to the jury that those comments were not evidence to be considered in its decision. Again, this means his claim cannot prevail. *See Allen*, 274 Wis. 2d 568, ¶26.

¶36 In short, Robinson's ineffective assistance claims all fail, because they were not sufficiently pled, and because he failed to prove the prejudice prong of the *Strickland* test. *See Allen*, 274 Wis. 2d 568, ¶¶23, 26. Therefore, the postconviction court did not err when it did not grant Robinson a hearing on these claims. *See id.*, ¶9.

*Sufficiency of the Evidence*

¶37 We next address Robinson's argument that the evidence was not sufficient to support the verdict regarding A.L., the child victim who did not testify. The issue of whether there is sufficient evidence to sustain a verdict is a question of

law that we review *de novo*. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. Nevertheless, our review is highly deferential to the factfinder's determinations. *See State v. Kimbrough*, 2001 WI App 138, ¶12, 246 Wis. 2d 648, 630 N.W.2d 752. We "may not reverse a conviction unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that ... no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Indeed, "our duty, consistent with the limitations of human knowledge and with the deference we owe the jury, is to decide whether 'any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial.'" *Smith*, 342 Wis. 2d 710, ¶44 (citation omitted).

¶38 The elements of child trafficking which the State was required to prove are that the defendant knowingly recruited, enticed, provided, obtained, harbored, transported, patronized, or solicited a child who has not reached the age of eighteen years old—or attempted this conduct on a child—for the purpose of commercial sex acts. *See* WIS. STAT. § 948.051(1) (2015-16); WIS JI—CRIMINAL 2124. To prove these elements, the State provided A.L.'s birth certificate showing her to be fifteen years old at the time of the charge against Robinson. Additionally, testimony was heard from a police officer who arrested A.L. for prostitution. The officer stated that he had found Robinson asleep in a car outside of a motel in Oak Creek, and, after identifying him, discovered that he had an open warrant for his arrest. The officer said that when he was being arrested, Robinson requested that the car keys and an identification card be given to a female in one of the motel rooms. In addition to finding that female—M.R.—in the motel room, the officer also discovered A.L. and a man who admitted that he was there for a prostitution date. M.R. testified regarding that incident, as well as other occasions where

Robinson had set up prostitution dates for her and A.L. and expected them to give him the money they had earned.

¶39 We conclude that this evidence was sufficient for the jury to draw the reasonable inference that Robinson had engaged in trafficking A.L. *See Smith*, 342 Wis. 2d 710, ¶44. We therefore reject Robinson's claim that it was insufficient to support the verdict.

*Interests of Justice*

¶40 Finally, we address Robinson's claim that he is entitled to a new trial in the interests of justice. "We may grant a new trial in the interest of justice when it appears from the record that the real controversy has not been fully tried." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. However, because this reversal power is "formidable," we utilize it "sparingly and with great caution." *Id.*

¶41 As described above, we have rejected all of Robinson's arguments, and we find nothing in the record that would support discretionary reversal. We therefore decline Robinson's request for a new trial. Accordingly, we affirm Robinson's judgments of conviction and the order denying his postconviction motion.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

15